Gerald GRAMLING, Appellant,

v.

NORTH DAKOTA WORKMEN'S COMPENSATION BUREAU, Appellee.

Civ. No. 9838.

Supreme Court of North Dakota.

March 12, 1981.

Fintan L. Dooley, Bismarck, for appellant; argued by Dooley.

Richard J. Gross, Sp. Asst. Atty. Gen., Bismarck, North Dakota Workmen's Compensation Bureau, for appellee; argued by Gross.

Vogel, Brantner, Kelly, Knutson, Weir & Bye, Fargo, for employer Melroe Division of Clark Equipment Co.

ERICKSTAD, Chief Justice.

The appellant, Gerald Gramling, appeals from the order and judgment entered in the District Court of Burleigh County affirming a decision of the North Dakota Workmen's Compensation Bureau which denied further wage loss benefits to him.

Gerald Gramling injured his back on April 22, 1977, in the course of his employment with Clark Equipment, Melroe Division, in Bismarck, North Dakota. The North Dakota Workmen's Compensation Bureau accepted liability for the claim and paid disability benefits from May 4, 1977, through May 31, 1979. The Bureau also paid for all medical treatment related to Gramling's back injury during this period of time.

After his injury, Gramling had surgery on his back three times, the first on July 14, 1977, the second August 29, 1977, and the third July 11, 1978. Gramling still had a great deal of pain which was not alleviated by the surgeries. The Bureau arranged for Gramling to go to a pain clinic in Minnesota. Dr. David Florence of the pain clinic believed that Gramling had substantially improved after treatment, but Gramling and his doctor, Dr. R. F. Kennedy, were critical of the treatment he received. The Bureau paid the hospital and medical expenses with the three laminectomies and the expenses incurred in attending the pain clinic.

Subsequently, the Bureau awarded Gramling a $4,000 lump-sum payment for permanent bodily impairment due to his back injury. The Bureau encouraged Gramling to become employed again. Dr. Kennedy also encouraged him to return to work and even Gramling expressed a desire to return to work. Discussions were held with Gramling concerning possible employment opportunities. Gramling wanted to become a minister, and commenced such a study, but, because he could not sit for long periods of time, he discontinued that effort. Possibilities in electronics and a whiteware business were also considered to no avail.

The Bureau continued to offer to pay for any retraining or rehabilitation Gramling thought he needed to secure employment in a field which would not require him to sit or stand for long periods of time, or require him to lift items or twist his back.

Gramling was evaluated at the Mandan Evaluation Center to determine interest, aptitude, ability, and attitude as they relate to work. Shortly thereafter, employment with his former employer, Melroe, was arranged. He began work June 1, 1979. He was to work as a night expediter. This required keeping track of parts supplies on the assembly line and making certain the parts were available as needed. The job description indicated no lifting was necessary, but that he would need to walk a maximum of two miles per shift. Gramling testified that the job required him to lift and shift parts in order to be able to count them and that he walked from five to fifteen miles in a shift. When he returned to work, his wage loss benefits from the Bureau were terminated and, subsequently, on June 20, 1979, Gramling was notified that his social security disability benefits were going to be terminated.

Gramling left the job on June 26, 1979, and complained to Dr. Kennedy of severe pain in his back and legs. Dr. R. J. Smith administered nerve blocks from which Gramling received varying relief. Thereafter, he refused to return to work stating that he was physically unable to do the job and was terminated by Melroe effective July 13, 1979.

On July 31, 1979, the Bureau terminated all benefits to Gramling concluding that he had failed to prove he remained disabled from his job-related injury. A rehearing was granted and was held November 26, 1979. An amended order of the Bureau dated February 14, 1980, denied Gramling any further wage loss benefits after June 1, 1979. The Bureau, however, revoked part of its previous order of July 31, and allowed any and all additional medical expenses related to his back injury to be paid, and also allowed an additional permanent, partial disability award should future medical evidence indicate that Gramling was entitled to such an award. Gramling appealed and the District Court of Burleigh County affirmed the Bureau's decision and order. Gramling now appeals on the basis of the following issues:

"A. *The Due Process or Fairness Issue*: Did Bureau resort to extra-record physician's letter in Claimant's file but not made part of hearing record deny Claimant opportunity to meet all material considered?

"B. *Substantial Evidence Issue*: Did Claimant provide sufficient evidence to show he was, by reason of his permanent disability, unsuited for work as expediter and, therefore, entitled to restoration of temporary disability benefits and rehabilitation?

"C. *Malingering: The Affirmative Defense Issue*: Did Melroe and the Bureau show by clear and convincing evidence that the Claimant was not credible, but was play-acting or malingering?

"D. *The Odd Lot Doctrine or Public Policy Issue*: Did the Bureau violate public policy by inattention to danger of reinjuring Claimant by coercing him to attempt and to continue the reemployment in a similar job?"

*I. Scope of Review*

■ On appeal, the decision of the Bureau is reviewed, not the decision of the district court. *Balliet v. North Dakota Work. Comp. Bureau*, 297 N.W.2d 791, 793 (N.D.1980). This court is bound to affirm the decision of the Bureau unless:

"1. The decision or determination is not in accordance with the law.

"2. The decision is in violation of the constitutional rights of the appellant.

"3. Provisions of this chapter have not been complied with in the proceedings before the agency.

"4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

"5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

"6. The conclusions and decision of the agency are not supported by its findings of fact." § 28–32–19, N.D.C.C.

A claimant has the burden of proving his right to participate in benefits available from the Bureau. *Steele v. North Dakota Workmen's Comp. Bur.*, 273 N.W.2d 692, 698 (N.D.1979).

Gramling's issues shall be considered pursuant to the foregoing standards.

## II. Violation of Due Process

Gramling asserts that the Bureau violated his constitutional right to due process by considering what he contends is extra-record material. The material he believes is outside the record is a Minnesota Multiphasic Personality Inventory (MMPI) administered while Gramling was at the pain clinic. This MMPI is not in the files; the files only contain letters from Drs. Kennedy and Florence interpreting the MMPI.

Dr. Florence's letter, addressed to Dr. Kennedy, was in response to criticism of the pain clinic. In this letter, Dr. Florence indicated that Gramling had a "significantly abnormal personality" and "demonstrated a very manipulative personality."

Another letter concerning the MMPI was written to Gramling's attorney by Dr. Kennedy. This letter quoting from the MMPI said "he is 'a worrisome and anxious person as to his state of health and is pre-occupied by body symptoms in a near hypochondriacal way. He is somewhat depressed, apt to deny psychological problems and could well have some sexual difficulties. Even if he has positive organic findings he is handling his circumstances through neurotic mecha-

nisms.'" Dr. Kennedy concluded, however, by saying:

"Even with his history of some neurotic tendencies and what seems to be anxiety intermixed with depressive symptoms at times, he does have enough back difficulty following three laminectomies to warrant restricted activity.

"I feel that he does have pain although he does not handle it well."

Gramling's attorney sent this letter in to the Bureau to be placed in Gramling's file, and now Gramling complains that the Bureau improperly relied upon the interpretations of the MMPI without having the MMPI in the file.

Gramling clearly had notice that an MMPI had been given him and, also, clearly had indications that this MMPI was adverse to him. He could have submitted the MMPI himself to the Bureau to show that the interpretations in the letters were incorrect or malicious; he chose not to do so. Gramling also could have objected to the letters interpreting the MMPI at the formal hearing, but he did not do so. In the absence of obvious error, a prerequisite to review of a trial court decision is that the matter has been appropriately raised in the trial court so that the trial court may intelligently rule on it. *Dobervitch v. Cent. Cass Pub. Sch. Dist. No. 17*, 283 N.W.2d 187 (N.D.1979); *State v. Rindy*, 299 N.W.2d 783, 785 (N.D.1980). While this rule has been stated in conjunction with hearings before a trial court, we believe the rationale of the rule is equally applicable to formal hearings before the Bureau as Section 28–32–06, N.D.C.C., provides that the admissibility of evidence shall be determined in accordance with the practice in the district court.[1] *See also Allied Chemical Corp. v. Workmen's*

1. *"28–32–06. Evidence to be considered by agency.*—The admissibility of evidence in any proceeding before an administrative agency shall be determined, insofar as circumstances will permit, in accordance with the practice in the district court. An administrative agency, or any person conducting an investigation or hearing for it, may waive the usual common-law or statutory rules of evidence if such waiver is necessary to ascertain the substantial

rights of all the parties to the proceeding, but only evidence of probative value shall be accepted. All objections offered to evidence shall be noted in the record of the proceeding. No information or evidence except such as shall have been offered and made a part of the official record of the hearing shall be considered by the administrative agency, except as otherwise provided in this chapter." § 28–32–06, N.D.C.C.

*Comp. App. Bd.,* 17 Pa.Cmwlth. 277, 330 A.2d 550, 551 (1975) (Failure to object to procedure before compensation board referees did not properly present the question to the appellate court on review.).

In failing to object to the letters containing interpretations of the MMPI at the administrative level, Gramling has failed to properly bring the question before us.

As a matter of practice, it appears that the Bureau produces for the formal hearing the claimant's entire file, which contains all claims, correspondence, and medical records filed with the Bureau. This file plus the testimony offered at the hearing before the Bureau becomes the record before the district court and this court on appeal. In *Bender v. North Dakota Workmen's Comp. Bur.,* 139 N.W.2d 150 (N.D.1965), the certified record before this court began with the claimant's application for benefits, and contained other pieces of information in the claimant's file. Gramling has not contended that he was deprived of examining anything in the claimant's file prior to, during, or following the hearing before the Bureau.

■ In the absence of timely objections to material contained in the file, the Bureau is entitled to rely upon the entire file. Should we determine that the Bureau's findings of fact are supported by a preponderance of the evidence, and that these findings of fact support the Bureau's conclusions of law and final decision, we are bound to affirm the Bureau's decision as long as none of the claimant's constitutional rights are abridged and the decision is in accordance with the law. Sections 28–32–19 and 28–32–21, N.D.C.C.

■ This court will review the record which was before the Bureau, the transcript of the formal hearing, and evidence presented at the hearing; but we will not consider any material outside of this record. *First American Bank & Trust Co. v. Ellwein,* 221 N.W.2d 509, 512 (N.D.1974). The Legislature has established the manner in which the admissibility of evidence is to be determined, and has limited the Bureau to considering the evidence in the record. § 28–32–06, N.D.C.C. (*See* footnote 1).

■ In this case, it appears that the Bureau did attribute some weight to the interpretations of the MMPI in the letters contained in Gramling's file. Gramling, however, had sent one of these letters to the Bureau, himself, and relied upon that letter in attempting to show his continued disability and need for rehabilitation. While the MMPI, itself, may have been better evidence than the letters, in the absence of a timely objection, we do not believe that Gramling's constitutional right to due process was denied him by the Bureau attributing some weight to the letters.

Gramling also appears to assert that the letter from Dr. Florence was not in the record in sufficient time to allow him to examine and address it at the hearing. Dr. Florence's letter, however, was in the file on November 6, 1978, more than one year before the hearing. This assertion is thus without merit.

### III. Sufficiency of the Evidence

■ Gramling also contends that he did provide sufficient evidence to support his claim that he continue to be disabled and was unable to perform the duties of an expediter because of his physical condition.

The Bureau's conclusion of law was that Gramling failed to prove he was disabled from work after he was terminated the last time by Melroe and before he received full-time employment on October 1, 1979.

The Bureau's relevant findings of fact are as follows:

"V.

"That the medical information in the file indicates that the claimant's physician has continued to encourage him to work.

"VI.

"That medical information also indicates that there are no objective findings of continuing back problems.

"VII.

"That there is no medical substantiation that the claimant's condition continues to disable him.

"VIII.

"That the claimant returned to work at Clark Equipment, Melroe Division, on June 1, 1979, performing a job consisting of light duties which required no lifting or bending.

"IX.

"That the claimant returned to work at Melroe on June 1, 1979, and discontinued his work on June 27, 1979, allegedly because he was required to do excessive walking, which activity allegedly aggravated his back condition.

"X.

"That testimony indicates that the claimant was advised to take rest breaks as needed, but he did not do so; that he did not report any inability to perform his duties because of his back problems; and that, in fact, he was able to perform his work.

"XI.

"That on or about June 20, 1979, the claimant received notice from the Social Security Administration that his disability benefits were being terminated for the reason that he was capable of being gainfully employed, and that the claimant remarked to the effect that he was in a better financial position when on Social Security and Workmen's Compensation disability benefits than when working.

"XII.

"That Melroe terminated the claimant's employment as of July 13, 1979, because of his refusal to return to work after June 27, 1979.

"XIII.

"That the claimant alleges that he is entitled to disability benefits from July 13, 1979, when he was terminated by Melroe, until October 1, 1979, when he returned to full-time work.

"XIV.

"That during the period referred to in number XIII above, the claimant accepted a part-time job with the City of Lincoln, which job, in spite of the claimant's allegations that 'walking' aggravated his condition and was frowned upon by his doctor, required 'walking' and other physical activities; that he also drove a bus twice a day; and that the job was part-time because there was no full-time work available, not because of an inability to work full-time.

"XV.

"That on October 1, 1979, with no change in his medical status, claimant went to work for Hedahls as a driver and delivery person on a full-time basis."

Our review of the evidence leads us to conclude that the preceding findings of fact are supported by the preponderance of the evidence. Gramling, in his brief, asserts that:

"tested by the Substantial Evidence Rule, discussed hereafter, the weight of the evidence properly included in the record tilts heavily, much beyond preponderance of evidence, toward the conclusion that he has, as a result of his work related injuries, physical limitations, pain, and was thereby rendered physically unsuitable for the responsibilities set out for him in the "Odd Lot" reemployment position identified herebefore as night expediter."

The Substantial Evidence Rule of *Geo. E. Haggart, Inc. v. N.D. Work. Comp. Bur.*, 171 N.W.2d 104 (N.D.1969), and its progeny has been replaced by legislative amendment of Section 28–32–19, N.D.C.C., in 1977, providing for the preponderance of evidence rule.

We have defined the preponderance of the evidence as "evidence more worthy of belief," or "the greater weight of the evidence," or "testimony that brings the greater conviction of truth." *See Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214, 219 (N.D. 1979).

Gramling asserts that the Bureau gave undue weight to a statement made by him that he could make more money on disability benefits than by working. At the hearing, Gramling said he told "quite a few people" this after he began work. This admission was properly considered by the Bureau as it appears that six days after Gramling discovered that the Social Security Administration was terminating his benefits, he quit work because of a painful back.

Gramling also contends that certain witnesses were more worthy of belief than the adverse witnesses. Determining the credibility of witnesses is exclusively a function of the administrative agency (Workmen's Compensation Bureau in this case). We will not interfere when the preponderance of the evidence supports the findings of fact. In this case, we cannot say that the findings of fact made by the agency are not supported by a preponderance of the evidence.

Although Gramling disputes this fact, there is evidence in the record that Gramling did not complain at work of back pain to anyone, and that he was happy to be back at work. All testimony indicates that he was doing the job of night expediter satisfactorily. There is also evidence that Gramling exaggerated the amount of walking he was required to do. The evidence is that Gramling quit work six days after discovering that his social security benefits were being terminated. Dr. Kennedy, Gramling's own doctor, encouraged him to continue working. At the time of the hearing, Gramling stated he had not used his electrical nerve stimulator in "quite awhile," that he worked at a job for approximately half of August and all of September, 1979, which consisted of walking to read meters on over 150 houses once a month, mowing grass, driving a school bus and dealing with water treatment. All this was done without complaint to his employer

about his back. Gramling also testified that since October 1, 1979, he had been employed full time as a truck driver.

It does appear that all the doctors who treated Gramling believed he had pain and permanent disability, but they also all believed he was capable of doing light work. In light of all the evidence, we cannot say that the Bureau's decision was not supported by the preponderance of the evidence.

■ Gramling next contends that the burden was upon the Bureau to prove that he was a malingerer. The Bureau does not have a burden of proving that the claimant is not entitled to benefits. Rather, the burden is upon the claimant to prove that he is entitled to benefits. The Bureau concluded he was not entitled to additional wage loss benefits and the findings of fact support that conclusion. Such findings are supported by the preponderance of the evidence.

■ Gramling's final assertion is that the Bureau violated public policy by "coercing him to attempt and to continue in reemployment in a similar job." The record shows that Gramling was anxious to return to the job of expediter. The job description as given to the Bureau called for no lifting; in fact, Melroe's union agreement classified the expediter's job as a management position and the expediter was prohibited from moving parts. The job description also stated that the expediter would walk a maximum of two miles per shift. Furthermore, Gramling's testimony was that he knew what an expediter's job consisted of and "knew what [he] was getting into." The evidence clearly shows that Gramling desired to take this position as an expediter and was not forced into accepting the position against his will by the Bureau.

The Bureau's final decision only denies Gramling wage loss benefits.[2] He is still

2. "IT IS, THEREFORE, THE DECISION AND ORDER of the Workmen's Compensation Bureau that additional wage loss benefits, over and above those already awarded, be and hereby are denied and the Bureau's Order Denying

Further Benefits of July 31, 1979, is affirmed in that respect; and

"IT IS FURTHER ORDERED that the Bureau's Order Denying Further Benefits of July 31, 1979, be and hereby is revoked to allow

entitled to present evidence of additional permanent, partial disability and full payment of any medical expenses incurred which are related to his back injury received April 22, 1977. Therefore, the preponderance of the evidence supports the Bureau's findings of fact and those findings support its conclusions of law and decision to deny wage loss benefits after Gramling's termination at Melroe, July 13, 1979. The Bureau's decision is affirmed.

VANDE WALLE, PEDERSON, PAULSON and SAND, JJ., concur.

payment of any and all additional medical benefits to which the claimant may be entitled as the direct result of his injury on April 22, 1977; and

"IT IS FURTHER ORDERED that the Bureau's Order Denying Further Benefits of July 31, 1979, be and hereby is revoked to allow payment of an additional permanent partial disability award, should future medical evidence indicate that the claimant is entitled to such an additional award as the direct result of his injury on April 22, 1977;"