Gerald R. INGLIS, Appellant,

v.

**NORTH DAKOTA WORKMEN'S COMPENSATION BUREAU, Appellee.**

Civ. No. 10026.

Supreme Court of North Dakota.

Nov. 12, 1981.

Chapman & Chapman, Bismarck, for appellant; argued by Daniel J. Chapman, Bismarck.

Richard J. Gross, Asst. Atty. Gen., N. D. Workmen's Compensation Bureau, Bismarck, for appellee.

PEDERSON, Justice.

Gerald Inglis sought compensation from the Workmen's Compensation Bureau for a back injury allegedly sustained while he was working for the Bechtel Power Corporation in Beulah. The Bureau denied his claim [1] and the district court affirmed the Bureau's order. This appeal followed. We affirm.

## THE EVIDENCE

*The Claimant's History of Back Problems*

Inglis has had back problems for several years. He hurt his back in 1972 while he was playing pool. In 1974, he "twisted wrong while chipping out old cement from a mixer." Inglis received workmen's compensation benefits for this back injury. At the end of his treatment for this particular injury, Inglis's doctor gave him a clean bill of health.

Two years later (June 14, 1976) Inglis sought help from a chiropractor, Dr. Wutzke. He told the doctor that he "felt a sharp pain in his right low back." Inglis received several chiropractic treatments during 1976. In December of 1977, Inglis returned to the chiropractor complaining of pain in the left pyriformis and L5 level. According to Dr. Wutzke, "[by January 7, 1978 Inglis] didn't have any problems and had gone back to work." On January 26, 1978 Inglis was back in Dr. Wutzke's office plagued by a "constant dull ache that would radiate pain down the left posterior leg to the toes when he coughed."

### The Alleged Injury and the Date

There is conflicting evidence concerning the date of Inglis's alleged injury.

Inglis first contacted the Bureau in early March of 1978 while he was hospitalized at St. Alexius for back problems. On March 9, 1978, a Bureau field representative, Bill Mitzel, visited Inglis in the hospital and helped him complete his claim form. On the claim form the date of injury is listed as February 13, 1978. The injury is described as follows:

"Putting re-bar in place, bent over to tie re-bar into place my back locked. Had been lifting bar prior to that."

Mitzel's report of his visit with Inglis states that Inglis was injured "on the same day that he started work" and that he worked until February 15, 1978.

At his hearing, Inglis testified that he was injured on February 16, 1978. He said that his injury occurred at midnight, "just before quitting time," while he was lifting a re-bar with three or four other men. Inglis stated, "I just picked up a piece [of re-bar] . . . and I got a sharp pain in my back and it started shooting down my leg." Except for completing his shift, Inglis testified that he did not work after his injury.

At the hearing, Inglis offered an explanation for the discrepancies between his testimony concerning the date of the injury (February 16) and the date listed in his claim form and Mitzel's report (February 13, "the same day he started work"). Inglis explained that he did "have some pain" on his first day of work but that he "just kept on working," having surmised that "it's just a regular backache." He continued, "day after day it just got worse and worse; and then the day on or about the 16th, wherever it was there when I went to lift, that's when it really hurt my back."

After his claim had been dismissed, Inglis stopped by the Bureau's office and informed them that the date of injury was February 16. He later telephoned the Bureau and "insist[ed]" that he injured his back on February 13, 1978."

A letter from Bechtel to the Bureau, questioning the validity of Inglis's claim, states that it "had no indication of [Inglis's] injury until receiving the claim form on

1. The Bureau initially denied Inglis's claim without a hearing. The district court of Burleigh County, following an appeal by Inglis, remanded the case for a hearing. The Bureau again dismissed the claim.

March 14, 1978." This letter identifies February 15, 1978 as the day of injury. It also recites Inglis's work history at Bechtel: he was employed from February 13 to February 22, 1978 and worked for three days during this period (February 13, 9 hours; February 15, 9 hours; and February 16, 10 hours). "Mr. Inglis was terminated because of absenteeism."

### The Co-Worker's Testimony

In April of 1978, Inglis told the Bureau that there were two witnesses to his injury, Van Johnson and Lee Massine.

In a statement dated July 23, 1979, Van Johnson stated that Inglis injured his back on February 17, 1978 while the two men were working together. Johnson thought that Inglis "missed a day or two before he was able to come back." Johnson's statement says: "When he came back, he told me that he had a terrible time getting home the night he was hurt because of the terrible pain in his back."

At the hearing, Johnson confirmed the above statement although he said he was not certain about the date of the injury or when Inglis returned to work. Johnson was certain that Inglis injured himself while the two men were working. He remembered Inglis saying, "Oh, oh. I did it." Johnson said, "you could see the man was hurting by looking in his eyes and the expression on his face that he had hurt himself." On cross-examination, Johnson stated that he had written an earlier statement which "got lost somehow or other." The hearing day was the first time Johnson learned of Inglis's prior back problems.

In a statement taken on September 10, 1979, Lee Massine, a job foreman, said that Inglis approached him on the evening shift of February 16, 1978 and "said that he thought that he had hurt or dislocated his back."

### The "Reporting" of the Alleged Injury

There is some confusion in this evidence. As Van Johnson explained, the confusion seems to stem, *in part*, from the fact that when the workers "talk about reporting an injury, . . . we're talking about reporting it to the nurse." The letter from Bechtel, noted above, states that "there was no report of injury made to our medical facility until [March 14, 1978]."

Mitzel's report states that Inglis reported his injury to his supervisor, Hank Siers, twice.

At the hearing, Inglis testified that he did *not* report his injury because it was near quitting time and he was in so much pain that he wanted to get home and see the doctor. Inglis responded in the same manner when he was asked why he did not inform the company nurse of the injury. Lee Massine stated that he informed the general foreman, Hank Siers, of Inglis's injury. Van Johnson stated that Siers knew Inglis had hurt his back. He was not certain who informed the foreman.

### Post-employment Medical Evidence

Inglis sought medical attention from Dr. Gruby on February 17, 1978. The doctor's records for that day state:

"This is a 32-year-old, caucasian male who has had a severe history of low back pain. However, over the last six months he has had a tingling electrical like shock go down his leg on the left side and to his big toe. This happened on several occasions. It has become much more painful."

From March 8 through March 11, 1978 Inglis was hospitalized under Dr. Gruby's care. The medical records compiled during this stay provide:

"This is a 32 year-old Caucasian male who has had a sudden snap develop in his back while working. He has had some pain radiation from the back down to his leg and toes, great toe area on the left side."

Inglis's condition was diagnosed as a protrusion of the L4–5 disc with L5 radiculopathy, left side. Ultimately, Inglis had surgery for a ruptured disc.

The record does not contain any medical testimony indicating that Inglis's disability was caused by lifting or tying a re-bar.

## THE BUREAU'S DECISION

The findings of fact made by the Bureau, for the most part, pertain to Inglis's prior history of back troubles and treatment, and to the discrepancies in the testimony concerning the date and reporting of the injury.[2] The Bureau also found "that the claimant's statements relative to his injury and his preexisting back problems were inconsistent, evasive, and contradictory and are not credible." As a matter of law the Bureau concluded: (1) that the claimant has failed to prove that he suffered an injury by accident arising out of and in the course of his employment; (2) that the claimant has failed to prove that his condition is causally related to an employment injury; and (3) that the claimant has failed to prove that he is entitled to benefits in connection with his condition.

## THE APPLICABLE PRINCIPLES OF LAW

▮ We review the findings of fact, conclusions of law, and order made by the Bureau, not the findings of the district court. *Claim of Bromley*, 304 N.W.2d 412, 414 (N.D.1981). The claimant's entire file, containing all claims, correspondence, and medical records filed with the Bureau, plus the testimony presented at the hearing, is

---

2. The Findings of Fact are:

"I.

"That on the 22nd of March, 1979, the claimant above named filed a claim with this Bureau for benefits resulting from an alleged injury sustained on the 13th day of February, 1978.

"II.

"That the claimant on the 13th day of February, 1978, was an employee of Bechtel Power Corporation, Beulah, North Dakota, and the occupation of the claimant was ironworker.

"III.

"That the claimant alleges his back locked when he put a re-bar in place.

"IV.

"That the claimant has a significant history of back injuries and treatments for those injuries.

"V.

"That on May 8, 1978, after the Bureau had dismissed his claim, the claimant called the Bureau and insisted that he had been injured on February 13, 1978, and further indicated that he would get statements from the witnesses and submit them to the Bureau.

"VI.

"That not until October 31, 1979, did the claimant submit witness statements, one dated July 23, 1979, and one dated September 10, 1979; one statement indicated that the claimant injured himself on February 17, 1978, and the other indicated that he had injured himself on the evening shift of February 16, 1978.

"VII.

"The claimant informed the Bureau's field representative that he had been injured on the first day of work and had later returned to work.

"VIII.

"That, at the hearing, the claimant indicated that after he had been injured, he went home, went to a doctor the next day and never reported his injury because he never returned to the worksite after his injury, but later the claimant stated that he had, in fact, informed his employer of the injury at the worksite.

"IX.

"That the claimant did not inform his employer of an alleged injury until March 10, 1978, at the time indicating to his employer that he had injured himself on February 15, 1978.

"X.

"That the claimant's witness at the hearing did not know when he had been injured and was not aware that the claimant had, in fact, had back problems for several years preceding his alleged employment injury.

"XI.

"That the claimant received chiropractic care for his back in 1976, 1977, and as late as January 26, 1978, just two weeks before he began work with Bechtel Power Corporation.

"XII.

"That the claimant indicated he had not ever suffered a back injury or had treatment for it prior to his employment injury in 1974 but then indicated he had injured his back in 1968 while in the service and had been treated at the VA Hospital in 1972 for back problems.

"XIII.

"That the claimant had been experiencing low back problems with pain radiating into his leg for a period of six months prior to seeing Dr. Gruby on February 17, 1978.

"XIV.

"That the claimant's treatment for his back in 1976, 1977, and 1978 was for non-employment related injuries for which no claim has ever been submitted.

"XV.

"That the claimant's statements relative to his injury and his preexisting back problems were inconsistent, evasive, and contradictory and are not credible."

scrutinized. *See Gramling v. North Dakota Workmen's Comp. Bur.*, 303 N.W.2d 323, 327 (N.D.1981).

■ We are bound to affirm the decision of the Bureau unless its findings of fact are not supported by the preponderance of the evidence or its conclusions of law are not supported by its findings of fact. Section 28–32–19, NDCC. The controlling "preponderance of the evidence" standard has been defined as "evidence more worthy of belief" or "the greater weight of the evidence," or "testimony that brings the greater conviction of truth." *Gramling v. North Dakota Workmen's Comp. Bur., supra*, 303 N.W.2d at 328. In *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214, 220 (N.D.1979), we rejected the contention that the "preponderance of evidence" standard authorized us to unconstitutionally find facts or substitute our judgment for that of the agency. To the contrary, under the "preponderance of the evidence" standard, "we determine only whether a reasoning mind reasonably could have determined that the factual conclusions reached were proved by the weight of the evidence from the entire record." *Power Fuels, supra.* In discussing judicial review of administrative decisions, we have said:

"Where an issue involving the application of expertise is entrusted to an agency composed of experts in that subject matter, this court is reluctant to substitute its own judgment for that of the agency." *Bank of Hamilton v. State Banking Bd.*, 236 N.W.2d 921, 922 (N.D. 1975), syllabus 4.

■ A claimant has the burden of proving his right to participate in benefits available from the Bureau. Section 65–01–11, NDCC.; *Steele v. North Dakota Workmen's Comp. Bur.*, 273 N.W.2d 692, 698 (N.D.1979).

The claimant must show that he or she was actually injured in the course of employment and that the ensuing disability is causally connected to the employment injury. *Claim of Bromley, supra*, 304 N.W.2d at 415, citing *Kuntz v. North Dakota Workmen's Compensation Bureau*, 139 N.W.2d 525 (N.D.1966). A compensation award cannot be made on surmise, conjecture or mere guess. *Kuntz, supra*, syllabus 4.

■ On the other hand, we must remember that the Workmen's Compensation Act is to be construed liberally with the view of extending its benefit provisions to all who can fairly be brought within them. *Claim of Bromley, supra*, 304 N.W.2d at 415, and cases cited therein.

Inglis's appellate attack is aimed primarily at the Bureau's conclusions. Claiming that there "isn't a shred of evidence" that contravenes his account of the injury, Inglis assails the Bureau's conclusion that "he wasn't hurt on the job." Inglis argues that the Bureau erroneously ignored Van Johnson's testimony concerning the injury. The fact that Johnson did not know of Inglis's prior ailments and the fact that Johnson thought that Inglis returned to work after the injury are not, in Inglis's view, sufficient reasons to discredit Johnson's testimony. Inglis's counsel condemns the Bureau for treating his client and Van Johnson as perjurers. Inglis also asks whether the discrepancies in the dates "form a sufficient basis upon which to predicate a denial of a legitimate claim for this unfortunate soul." [3]

■ Having reviewed the entire record, we conclude that the Bureau's findings of fact are supported by the preponderance of the evidence and that its conclusions are sustained by the factual findings. A review of the testimony certainly supports the finding that Inglis has a significant history

---

**3.** Inglis's counsel, insisting that February 16, 1978 is the day of the injury, explains that the discrepancies between Mitzel's report and the hearing testimony stem, in part, from the inarticulateness of his client. He also points out that Inglis was hospitalized during Mitzel's visit. In his view, a blatant error in the report (the statement that Inglis saw Dr. Gruby on February 16 and was hospitalized since that time) shows the confusion of the claimant. At the hearing Mitzel testified that he reports the information he gathers from the claimant, whether it is accurate or not.

of back problems. The evidence shows that Inglis received chiropractic care just two weeks before he began his job. The documentary evidence clearly shows the discrepancies in the dates. Evidentiary support for the Bureau's finding that Johnson did not know when Inglis was injured can be found in Johnson's uncertainty concerning the date of injury.

Being only too cognizant of the fraility of human memories, we do not, as a general principle, think that discrepancies in the dates of an alleged accident provide an adequate reason to deny a worker's claim for benefits. In this case, however, we think that the additional evidence, including Inglis's prior medical history and treatment and the Bureau's findings that Inglis was not a credible witness, provides sufficient factual support for the Bureau's conclusions. Indeed, the credibility of the claimant is a key factor in this case. As the Bureau has argued, the question of the credibility of witnesses is primarily within its purview. *See* 3 Larson, The Law of Workmen's Compensation, § 80.20, at 15–385, n. 55 (1976). While the Bureau may not make credibility findings in order to "sew up" the claimant's chances for a successful appeal, *see Bergstrom v. Bergstrom,* 296 N.W.2d 490, 494 (N.D.1980), such findings will be upheld as long as they are supported by a preponderance of the evidence. *Gramling, supra,* 303 N.W.2d at 329.

Under well-established principles of compensation law, the Bureau was not obliged to accept the testimony of Van Johnson. The Bureau may refuse to give credence to any witness's testimony when it appears that there are matters which impair its accuracy. This may arise when the intrinsic character of the evidence or the extrinsic circumstances of the case cast suspicion upon the evidence. *See generally,* 100 C.J.S. Workmen's Compensation § 547(8) (1958); 3 Larson, The Law of Workmen's Compensation, § 80.20, at 15–396 (1976).

Under the circumstances of this case, we cannot say that the Bureau erred in discounting Johnson's testimony.

"The general frame of the power of judicial review is to keep the administrator within the valid statute which guides him and keep him from unreasonable excesses in the exercise of his function, and to ascertain whether there is warrant in the law and the facts for what the administrative agency has done, the court being limited to questions affecting constitutional power, statutory authority, and the basic prerequisites of proof. The primary limitation upon the power of the court to review is in regard to matters calling for the exercise of expert judgment which are committed to the discretion of the administrative agency. Thus, judicial review is extremely limited in regard to findings of fact and to expert judgments of an administrative agency acting within its statutory authority. The courts must not usurp the functions of the administrative agency nor intrude upon the domain which the legislature has entrusted to the agency." *Geo. E. Haggart, Inc. v. North Dakota Work. Comp. Bur.,* 171 N.W.2d 104, 111 (N.D.1969), quoting from 2 Am.Jur.2d Administrative Law § 612, at 453–454 (1962).

Although we empathize with Mr. Inglis in his unquestionably painful plight, we are bound, under the law, to affirm the decision of the Bureau and of the district court.[4]

ERICKSTAD, C. J., and PAULSON, SAND and VANDE WALLE, JJ., concur.

---

4. During oral argument, members of this court raised questions relating to the application of § 65–04–18, NDCC, to this case. That statute applies whenever a previous injury or preexisting condition is aggravated by an employment-connected injury. Even though the matter was neither argued nor briefed, we have examined the record and find that the Bureau's determination that there was no employment-connected injury is proper.