331 N.W.2d 822 (1983)
James D. JIMISON, Appellant,
v.
NORTH DAKOTA WORKMEN'S COMPENSATION BUREAU, Appellee.
Civ. No. 10268.
Supreme Court of North Dakota.
March 17, 1983.
Hartelius and Associates, Great Falls, Mont. and Mahoney & Mahoney, Center, for appellant; argued by Ann Mahoney, Center.
Joseph F. Larson, II, Asst. Atty. Gen., North Dakota Workmen's Compensation Bureau, Bismarck, for appellee; argued by Joseph F. Larson, II, Asst. Atty. Gen., Bismarck.
*823 ERICKSTAD, Chief Justice.
This is an appeal by James D. Jimison from a judgment of the District Court of McKenzie County dated May 10, 1982, affirming the North Dakota Workmen's Compensation Bureau's order dated July 21, 1980, which affirmed the Bureau's previous order denying Jimison further disability benefits. For the reasons hereinafter stated, we affirm.
On January 28, 1979, Jimison was injured in a work-related accident while employed by Circle T Drilling Company as a motorman on a drilling rig. Jimison described the accident and resultant injuries to his treating physician, Dr. Harper, in the following manner:
"Boiler was out on the rig. Rig floor was icy. Stepped off floor to pick up chain. Feet flew out from under, causing me to fall, injuring shoulder, neck, right arm. Fingers (2 small on right hand) have no feeling . . . . Constant headache since injury."
The Bureau accepted liability for Jimison's injuries and consequently paid him temporary total disability benefits[1] from January 29, 1979, through October 14, 1979. These facts are not questioned on appeal.
On November 14, 1979, the Bureau issued an order denying Jimison any further disability benefits. Upon Jimison's request, a rehearing was held with regard to this matter on May 20, 1980. Subsequent thereto, the Bureau issued an order, dated July 21, 1980, affirming its prior decision to terminate Jimison's benefits. In this order, the Bureau made the following findings of fact and conclusions of law:
"FINDINGS OF FACT

"I.
"That the claimant filed a claim for benefits with the North Dakota Workmen's Compensation Bureau on March 1, 1979, for an injury sustained by him on January 28, 1979.
"II.
"That on January 28, 1979, the claimant was employed by Circle T Drilling Company, Inc., of Denver, Colorado, as a motorman.

"III.
"That the claimant suffered injuries to his back, neck, and fingers on his right hand due to falling on ice on the rig floor while in the course of his employment on January 28, 1979.

"IV.
"That the Bureau accepted liability for the claim and paid benefits indicated above.

"V.
"That the claimant has been extensively evaluated, at the Bureau's expense, at the University Hospital of the University of Washington.

"VI.
"That the medical information obtained as the result of that evaluation indicated that the claimant's primary problem was of headaches which were felt to be tension-related; that the bilateral arm pain with right hand paresthesias would be aided by an excerise [exercise] program *824 in that the strength that the claimant has had in his arms and legs has decreased over the past year primarily due to disuse; and that the third problem was found to be of mild arachnoditis from previous surgery.

"VII.
"That the medical information supplied from the University Hospital also indicates that these findings were discussed with the claimant and his wife and that they were informed of recommendations made at the hospital.

"VIII.
"That the claimant and his wife denied any knowledge of the findings of recommendations made by the University Hospital.

"IX.
"That the claimant is capable of engaging in many employment related activities and has a substantial income from those activities.

"CONCLUSIONS OF LAW

"I.
"That the claimant has failed to prove that he remains disabled as a result of an employment injury on January 28, 1979.

"II.
"That the claimant has failed to prove that he is entitled to any further benefits under the Workmen's Compensation Act in connection with his condition."
Jimison appealed the Bureau's decision to the District Court of McKenzie County which affirmed the Bureau's order. Consequently, Jimison now appeals from the judgment of the district court. His contentions on appeal are twofold: first, that findings of fact numbers six and nine are not supported by a preponderance of the evidence; and, second, that the Bureau's conclusions of law are not sustained by its findings of fact.
When reviewing an appeal from an administrative agency decision, this court is guided by the standard of review set forth in Section 28-32-19, N.D.C.C., which reads in pertinent part:
"... the court shall affirm the decision of the agency unless it shall find that any of the following are present:
* * * * * *
5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
6. The conclusions and decision of the agency are not supported by its findings of fact."
In accordance thereto, we must review the findings of fact, conclusions of law and order made by the Bureau rather than the findings by the district court. Davis v. North Dakota Workmen's Compensation Bureau, 317 N.W.2d 820, 822 (N.D.1982); Nelson v. North Dakota Workmen's Compensation Bureau, 316 N.W.2d 790, 793 (N.D.1982); Inglis v. North Dakota Workmen's Compensation Bureau, 312 N.W.2d 318, 321 (N.D.1981); Claim of Bromley, 304 N.W.2d 412, 414 (N.D.1981); Steele v. North Dakota Workmen's Compensation Bureau, 273 N.W.2d 692, 696 (N.D.1979). This review is limited and involves the three-step process of determining whether or not the findings of fact are supported by a preponderance of the evidence, whether or not the conclusions of law are sustained by the findings of fact, and whether or not the agency decision is supported by the conclusions of law. Davis, supra, 317 N.W.2d at 822; Nelson, supra, 316 N.W.2d at 793; Inglis, supra, 312 N.W.2d at 322; Claim of Bromley, supra, 304 N.W.2d at 415.
Hence, in the case at bar, our first step is to ascertain whether or not the disputed findings of fact are supported by a preponderance of the evidence. In Power Fuels, Inc. v. Elkin, 283 N.W.2d 214, 219 (N.D.1979), we defined preponderance of evidence as "evidence more worthy of belief," or "the greater weight of evidence," or "testimony that brings the greater conviction of truth." See, also, Gramling v. *825 North Dakota Workmen's Compensation Bureau, 303 N.W.2d 323, 328 (N.D.1981); Steele, supra, 273 N.W.2d at 697. We have further clarified the scope of review to be utilized under the "preponderance of evidence" standard by enunciating the following guideline:
"In construing the `preponderance of the evidence' standard to permit us to apply the weight-of-the-evidence test to the factual findings of an administrative agency, we do not make independent findings of fact or substitute our judgment for that of the agency. We determine only whether a reasoning mind reasonably could have determined that the factual conclusions reached were proved by the weight of the evidence from the entire record." Power Fuels, Inc., supra, 283 N.W.2d at 220.
Furthermore, when reviewing the evidence in a workmen's compensation case, this court will consider only the record which was before the Bureau, the transcript of the formal hearing, and any evidence presented at the hearing.[2] Section 28-32-19, N.D. C.C.; Gramling v. North Dakota Workmen's Compensation Bureau, 303 N.W.2d 323, 327 (N.D.1981).
Could a reasoning mind have determined, as did the Bureau, that the factual conclusions in the sixth finding of fact were proved by the weight of the evidence from the entire record? In order to adjudicate this question, we are required to evaluate the medical report issued by the University Hospital [Seattle Pain Clinic] of the University of Washington, Seattle, Washington, subsequent to its evaluation of Jimison for approximately two weeks in 1980. The Seattle Pain Clinic analyzed Jimison's case in the following manner:
"HOSPITAL COURSE:
"PROBLEM # 1Headache.
"These headaches were felt to be tension related .... It was felt that instruction in relaxation techniques would be beneficial in helping Mr. Jimison control his headaches.
"PROBLEM # 2Bilateral arm pain with right hand paresthesias.
"Evaluation of this symptomatology formed a primary basis of his evaluation during this hospitalization. . . .
". . . A multidisciplinary conference was held on the final day of the patient's admission and recommendations as a result of that conference included suggestion that an exercise program be undertaken to help Mr. Jimison keep up the obvious great strength that he has had in his arms and legs which has decreased over the past year, mainly because of disuse....
* * * * * *
"PROBLEM # 3Bilateral leg pain and sacral pain.
". . . No growth was found on culturing. This was felt to be consistent mild arachnoiditis from his previous surgery.[3] Because complaints of posterior thigh pain and sacral pain increased during his hospitalization, particularly during times when he was confined to bed as after his myelogram, the day of his discharge, an epidural injection through the sacral hiatus with 80 mg of Depo-Medrol was done to try to relieve any pain in his legs from the arachnoiditis."
The Bureau's conclusions in its sixth finding of fact concerning Jimison's bilateral arm pain and arachnoiditis are, in essence, verbatim statements from the Seattle Pain Clinic's report. Therefore, because we have found no conflicting evidence in the record with regard to these medical observations, *826 we conclude that the Bureau's findings relative to Jimison's bilateral arm pain and arachnoiditis are supported by a preponderance of the evidence.
In its sixth finding, the Bureau also determined that Jimison's "primary problem was of headaches." However, we have scrutinized the entire record and found no evidence to support this factual conclusion other than a heading in the Seattle Pain Clinic's report which states the following: "PROBLEM # 1headache". Because we do not believe that a simple numerical categorization should be construed to mean that Jimison's primary problem was that of headaches, we determine that a reasoning mind could have determined that the greater weight of the evidence indicated that Jimison suffered from headaches but not that his primary problem was of headaches.
In determining whether or not the "preponderance of evidence" standard was satisfied with regard to the Bureau's ninth finding of fact, we carefully scrutinized Jimison's entire file containing all the claims, correspondence, and medical records filed with the Bureau. See, Inglis, supra, 312 N.W.2d at 321; Gramling, supra, 303 N.W.2d at 327. Our examination revealed that information in a report furnished to the Bureau by Gary Stefonowicz of Equifax Services was of substantial import in resolving this issue. Stefonowicz investigated Jimison on the Bureau's behalf and, subsequent thereto, made the following observations:[4]
"I ... started a conservation [conversation] with Jim Pritkaus about what type of business the claimant was in. He told me that he owned a backhoe tractor and did excavation work on basements, water and sewer lines, and other general excavation work. He said that the claimant's son Jimmy Jimison works in the business with his father.... He said that they have only one backhoe, and the son usually operates that while the claimant usually does the bidding on the jobs, drives the pickup or truck to the site....
"Mrs. Hill ... said that he was a excavation contractor, and he had his son working in the business with. However she said that he drives the truck or pickup to job sites, handles the business end of it and does maintence [maintenance] work on the equipment in his shop at home.....
"I stopped at the home of this neighbor [A.D. Volbrecht], .... He added that the claimant normally does the bidding on jobs, supervision and maintence [maintenance] work on the excavation equipment....
"SELF EMPLOYED CLAIMANT: Prior to his disability he worked in the oil fields as a roughneck and operated his excavation business in his spare time. He would earn approximately $20-24,000 from his oil field job and net $15,000 from his excavation business. Since his disability his son has started in the business.... His son is known to operate the backhoe and he also does the heavy work. Claimant does mechanical work, bidding on job and supervision or work."
The testimony of Jimmy Jimison, the claimant's son, at Jimison's rehearing verifies the fact that since his injury Jimison has been involved in the excavating business in a supervisory capacity.
"Q What I was referring toif you need parts and you have to go to a parts dealership or whatever, he goes and picks them up?
"A Yeah.
"Q And biddinghe's indicated that he does most. Do you do any of the bidding?
"A Well, ... yes ...."
The record further reveals that in 1979 Jimison's gross income from his excavating business was approximately $35,000. Therefore, based upon our review of both the record and the transcript of Jimison's hearing, we conclude that the greater weight of the evidence supports the Bureau's *827 finding "that [Jimison] is capable of engaging in many employment related activities and has a substantial income from those activities."
Thus, with the exception of a minor phrase in the sixth finding of fact, the Bureau's sixth and ninth findings of fact are supported by a preponderance of the evidence. Hence, we must now address the question of whether or not the Bureau's findings of fact support its conclusions that Jimison is no longer disabled, and therefore not entitled to any further temporary total disability benefits pursuant to Section 65-05-09 of the North Dakota Century Code.
Basic to a determination of this issue are the legal principles defining the term "total disability". It is well established that "total disability" exists when a workman is unable, solely because of his job-related injury, to perform or obtain any substantial amount of labor in his particular line of work, or in any other for which he would be fitted. Lyson v. North Dakota Workmen's Compensation Bureau, 129 N.W.2d 351, 356 (N.D.1964). Where the Bureau has determined, as it did in this instance, that Jimison is capable of engaging in many employment-related activities such as repairing the machinery, bidding for prospective jobs, and supervising the excavating work, and where such finding is supported by a preponderance of the evidence, we conclude that Jimison is not "totally disabled".
Accordingly, we conclude that the Bureau's findings of fact sustain the agency's conclusions of law which in turn sustain its order delineating that Jimison is not disabled as a result of his employment-related injury on January 28, 1979, and thus at this time is not entitled to further temporary total disability benefits.[5]
In accordance with this opinion, the judgment of the district court is hereby affirmed.
VANDE WALLE, PEDERSON, SAND and PAULSON, JJ., concur.
NOTES
[1] The Bureau's order terminating Jimison's benefits does not specify as to the specific type of workmen's compensation benefits Jimison had been receiving. However, we believe the following correspondence between Richard J. Gross, counsel for the Workmen's Compensation Bureau, and Randall O. Skorheim, counsel for Jimison, indicates that the Bureau awarded Jimison benefits on the basis that he was "totally disabled":

"Dear Mr. Skorheim:
"We have your letter and your request for a rehearing....
"... they [the commissioners] would prefer that any further action on this claim await the reports from the Seattle Pain Clinic as to Mr. Jimison's condition. If the Pain Clinic evaluation indicates that Mr. Jimison remains totally disabled as the result of his employment injury, the Bureau will, at that time, reverse its order and reinstate benefits from the date [of] their termination."
[2] When adjudicating the issues presented for review, Jimison has urged us to consider Exhibits A and B which are attached to his brief. However, such evidence is not a part of the record and, accordingly, we have given it no consideration.
[3] The "previous surgery" referred to in the Seattle Pain Clinic's report is that of a laminectomy operation undergone by Jimison in 1966 for low back complaints. Jimison does not contend that he is entitled to disability benefits due to aggravation of a preexisting injury. Therefore, in adjudicating the issues raised on appeal, we have not considered the question of compensation for aggravation of a prior condition.
[4] No objection was made to a consideration of Mr. Stefonwicz's observations, but it was asserted that the son left other employment to aid his father and they could have earned more if the father could have continued to operate the backhoe.
[5] We make no determination today, nor could we do so on the state of the record, as to whether or not Jimison would be entitled to compensation for partial disability pursuant to Section 65-05-10, N.D.C.C., which reads:

"65-05-10. Partial disabilityWeekly Compensation. If the injury causes partial disability the fund shall pay to the disabled employee during such disability a weekly compensation to be fixed by the bureau." At a minimum, perhaps three factors should exist for an individual to be partially disabled. First, there should be a physical disability; second, the disability should be partial, or in other words, the employee should be able to work subject to the disability; and third, there should be an actual loss of earning capacity that is causally related to the disability. Dorn v. A.J. Chromy Const. Co., 310 Minn. 42, 47, 245 N.W.2d 451, 454 (1976). In Larson's treatise on workmen's compensation, it is stated that:
"... post-injury earnings and earning capacity are not synonymous. Earnings equal to preinjury earnings are the strongest evidence of nonimpairment of capacity, but they are not conclusive. In most jurisdictions their effect seems to be to create a presumption which may be overcome by other evidence showing that the actual earnings do not fairly reflect claimant's capacity." 2 Larson, Workmen's Compensation Law, § 57.31, p. XX-XXX-XX-XXX (1982).