Lucille M. RISCH, Appellant,

v.

NORTH DAKOTA WORKERS COM-
PENSATION BUREAU, Appellee,

and

Mandan Public Schools, Respondent.

Civ. No. 890096.

Supreme Court of North Dakota.

Oct. 24, 1989.

Dietz & Little, Bismarck, for appellant; argued by Kathryn L. Dietz.

Hugh Patrick Seaworth (argued), Asst. Atty. Gen., Bismarck, for appellee.

LEVINE, Justice.

Lucille Risch appeals from a district court judgment affirming the denial of workers compensation benefits. We affirm.

Risch injured her back on April 8, 1987, while working as a part-time assistant cook for the Mandan Public Schools. At the time of her injury, Risch was also employed part-time at the deli counter at K–Mart in Bismarck.

She filed a claim for benefits with the North Dakota Workers Compensation Bureau (the Bureau) on or about April 27, 1987. The Bureau accepted liability for the injury and awarded Risch medical benefits.

Risch continued to work both jobs until October 21, 1987, when, following funeral leave for the death of her mother, she quit working allegedly due to increasing back pain and inability to do the work required of her. The Bureau paid disability benefits beginning October 27, 1987. In May 1988, K-Mart offered Risch her old job at reduced hours to start with but Risch refused to return to work. In June 1988, the Bureau entered an order terminating benefits on the grounds that Risch had failed to prove that she remained disabled and had failed to comply with the requirements of NDCC § 65-05.1-04 by refusing to return to work.[1]

Risch requested and was granted a formal rehearing. Following the hearing, the Bureau affirmed its earlier order denying further benefits. Risch filed an appeal in district court. The district court affirmed the Bureau's decision and Risch appealed.

Section 28-32-19, NDCC, requires us to affirm the Bureau's decision unless its findings of fact are not supported by a preponderance of the evidence or unless its conclusions of law are not supported by its findings. In determining whether the Bureau's findings of fact are supported by a preponderance of the evidence, we determine only whether a reasoning mind could have reasonably determined that the factual conclusions were supported by the weight of the evidence. *Kroeplin v. North Dakota Workers Compensation Bureau*, 434 N.W.2d 351, 352 (N.D.1989).

The claimant has the burden of proving by a preponderance of the evidence that she is entitled to receive benefits from the Bureau. NDCC § 65-01-11. If the Bureau terminates benefits, the claimant has the burden of proving her right to continue receiving benefits. *Howes v. North Dakota Workers Compensation Bureau*, 429 N.W.2d 730, 733 (N.D.1988).

■ Risch first attacks the Bureau's finding that she failed to prove she remains disabled. Former NDCC § 65-01-02(8),[2] in effect at all times relevant to Risch's claim, defined disability as the "inability to work as a result of a compensable injury." We have defined "total disability" as a worker's inability, "solely because of his job-related injury, to perform or obtain any substantial amount of labor in his particular line of work, or in any other for which he would be fitted." *Jimison v. North Dakota Workers Compensation Bureau*, 331 N.W.2d 822, 827 (N.D.1983). In *Jimison*, we suggested that "partial disability" contemplates at least three factors: "First, there should be a physical disability; second, the disability should be partial, or in other words, the employee should be able to work subject to the disability; and third, there should be an actual loss of earning capacity that is causally related to the disability." *Id.* at 827 n. 5.

In determining that Risch was not disabled, the Bureau relied on the fact that Risch had been released by her doctor to return to work at either of her part-time jobs with only two restrictions: she was not to stand continuously for more than two hours or lift more than twenty pounds.

Although Risch disputed it, the Bureau specifically found that the positions at K-Mart and Mandan Public Schools, as the employers were willing to modify them, were within Risch's physical limitations and medical restrictions. The Bureau also rejected Risch's testimony that she did not know or understand what accommodations would be made for her at K-Mart. The Bureau has the responsibility and duty to pass on the credibility of witnesses appearing before it, including the claimant. *Claim of Bromley*, 330 N.W.2d 498, 502 (N.D.1983). The Bureau's function is to weigh the evidence and make findings on questions of fact. Whether Risch was able to work was a question of fact. The Bureau's finding that she was capable of returning to work, albeit with some restrictions, is supported by the record.

---

1. Risch's benefits have since been reinstated, effective December 9, 1988. This appeal concerns Risch's right to receive benefits during the period June 9, 1988 to December 8, 1988.

2. Section 65-01-02, NDCC, was amended by ch. 295, § 4, and by ch. 765, § 1 of the 1989 Session Laws.

■ A worker who is medically able to return to work does *not* have an inability to work and thus is not totally disabled. *See Claim of Olson,* 419 N.W.2d 894, 897 (N.D. 1988). Further, by refusing to return to work when she was able to do so, Risch failed to establish the extent of her disability, if any. She also prevented the Bureau from determining her "actual loss of earning capacity that is causally related to the disability." *Jimison, supra,* 331 N.W.2d at 827 n. 5. Thus, Risch failed to prove that she was partially disabled. We conclude that a reasoning mind could have reasonably determined that by the weight of the evidence that Risch failed to prove that she remained disabled.

■ Risch also argues that it was error for the Bureau to terminate benefits for her failure to comply with NDCC § 65–05.1–04.[3] Before it was amended (see footnote 3), § 65–05.1–04 provided:

"It shall be the responsibility of the injured worker to seek, obtain, and retain reasonable and substantial employment in order to reduce the period of temporary disability to a minimum. In the event that the injured worker is unable to obtain substantial employment as a direct result of his injury he shall promptly notify the bureau and thereafter be available for such examinations and testing as may be prescribed by the bureau to determine whether or not a program of rehabilitation is necessary. If the bureau determines that a program of rehabilitation is necessary and feasible, the injured worker, upon having been so notified, shall be available for such a program.

"If the injured worker shall fail to comply with this section without a reasonable cause, the bureau, by formal order, shall discontinue all lost-time benefits under this title during the period of noncompliance. If, upon the bureau order becoming final, the period of noncompliance shall continue for six months, the bureau shall have no further jurisdiction in awarding any further temporary total, temporary partial, permanent total, or rehabilitation benefits."

The Bureau found that "reasonable and substantial employment" was available to Risch because she could have returned to either the position at K–Mart or Mandan Public Schools on or about May 16, 1988. In fact, the Bureau, through its rehabilitation coordinator, had arranged for Risch to return to K–Mart under a reduced-hours arrangement. Under the "work hardening program," Risch, on May 16, would begin working three hours a day, three days a week and "gradually increase by hours per day, days per week and/or duties" until she was working her pre-injury schedule. Risch did not return to K–Mart and was terminated for job abandonment effective May 18, 1988.[4]

The Bureau viewed Risch's refusal to return to work at either the K–Mart or Mandan Public Schools job as noncompliance with Risch's duty under § 65–05.1–04 to "seek, obtain, and retain reasonable and substantial employment." Risch counters that even if she had returned to K–Mart, the nine-hour work week proposed to her was not "reasonable and substantial employment" because, before her injury, she had been working forty to forty-six hours each week at her two jobs. Risch also argues that the modified work program set up for her return to work at K–Mart was actually a program of rehabilitation contemplated by § 65–05.1–05 and, as such, the Bureau was required to enter into a rehabilitation contract with her prior to discontinuing benefits for noncompliance. We consider these two arguments together.

At the time Risch's benefits were terminated, NDCC § 65–05.1–05, since repealed, provided:

---

**3.** Section 65–05.1–04 was amended by S.L.1989, ch. 771, § 7. The new section applies to all awards of vocational rehabilitation services made on or after July 1, 1989, irrespective of the date of injury. The new language does not apply to Risch's claim.

**4.** The record shows that Risch returned to work at the Mandan Public Schools job on August 26, 1988. She left after two hours, complaining of back pain.

"In the event the bureau shall determine that it is necessary to provide a rehabilitation program to a claimant to comply with the purpose of this chapter, the bureau shall enter into a contract with the claimant. The contract shall provide for, but not be limited to:

1. A description of the rehabilitation program to include the actual time, place, cost, and other significant data involved in the particular program.

2. The equipment and tools necessary for the training and vocational performance and the ownership thereof.

3. The amount of rehabilitation allowance to be paid to the claimant and the manner in which the allowance is to be disbursed.

4. The claimant's faithful performance of the terms of the contract.

The bureau shall provide attorney fees to the claimant's attorney, in an amount as established by rule of the bureau, from the bureau's general fund for the purpose of effecting the contract."

Risch was advised to return to work by her physician. Even if, as Risch asserts, the reduced-hours plan was not "reasonable and substantial employment," Risch was obligated under § 65–05.1–04 to make herself available for the modified work before the Bureau had any obligation to consider the necessity and feasibility of a rehabilitation program. Section 65–05.1–04, NDCC, requires the injured worker to be available for examinations and testing the Bureau deems necessary to aid it in its determination of the need for a program of rehabilitation. The sanction for failure to comply, without good cause, is discontinuation of lost-time benefits. The Bureau's request that Risch return to work at K–Mart was a reasonable attempt to test Risch's limitations under the proposed modifications. Because she did not return to work at K–Mart on May 16, 1988, when she was able to do so, Risch did not make herself available for this testing. Her failure to do so was noncompliance with § 65–05.1–04 and prevented the Bureau from assessing, *i.e.* testing, her capability to work and her need for rehabilitation.

Risch had the burden of proving a continuing inability to work. If, as Risch has argued all along, she could not perform the tasks required by the K–Mart job, it was simple enough to demonstrate this inability by reporting to work at K–Mart and making a good-faith effort at doing the job. If she had, she might have convinced the Bureau that the results of this "test" indicated that a program of rehabilitation was necessary and a rehabilitation contract might have been offered to her then and there.

We have previously suggested, and §§ 65–05.1–04 and 65–05.1–05 clearly provide, that a rehabilitation contract is required only if the Bureau determines it is necessary and feasible to provide a program of rehabilitation to the claimant. *See Claim of Olson, supra,* 419 N.W.2d at 897; NDCC § 65–05.1–04 (1985) (amended 1989); NDCC § 65–05.1–05 (1985) (repealed by S.L.1989, ch. 771, § 6, effective July 16, 1989). We do not mean to imply that the Bureau has unfettered discretion to choose which claimants to offer rehabilitation contracts. At oral argument, counsel for the Bureau attempted to articulate the Bureau's standard for determining when a program of rehabilitation is necessary and feasible. He stated that the test is whether, considering all circumstances, it is likely a claimant cannot return to full employment in the foreseeable future. The Bureau argues that it would have been premature in May 1988 to provide Risch with a rehabilitation program when her orthopedist, chiropractor, and other medical experts were recommending an immediate return to one of her two part-time jobs. When Risch's benefits were terminated, it appeared likely to the Bureau that Risch would eventually return to full employment. Under those circumstances, the Bureau was not obligated to offer Risch a rehabilitation contract.

We conclude that the Bureau's findings of fact that Risch failed to prove that she remains disabled and that she failed to comply with § 65–05.1–04 sustain its conclusions of law which in turn sustain its order denying benefits. Risch has raised

other issues on appeal. Her arguments have been considered and do not affect our decision.

Accordingly, the judgment of the district court upholding the Bureau's order denying benefits is affirmed.

ERICKSTAD, C.J., and VANDE WALLE and GIERKE, JJ., concur.

MESCHKE, Justice, concurring.

I concur in most of the majority opinion and in the result. I hesitate over use of a dictum to declare that claimant failed to prove continuing entitlement to disability benefits.

The dictum repeated in the majority opinion should be more carefully considered. In *Gramling v. North Dakota Workmen's Compensation Bureau,* 303 N.W.2d 323, 329 (N.D.1981), the opinion for this court rejected an argument that the "burden was upon the Bureau to prove that [the claimant] was a malingerer," saying that "the burden is upon the claimant to prove that he is entitled to benefits." We have recently begun citing *Gramling* for a broader statement:

> "If the Bureau terminates benefits, after initially accepting a claim and paying benefits, the claimant has the burden of proving his or her right to continue receiving benefits."

*Hayes v. North Dakota Workers Compensation Bureau,* 425 N.W.2d 356, 357 (N.D. 1988). Similarly, *Howes v. Workers Compensation Bureau,* 429 N.W.2d 730, 733 (N.D.1988); *Hayden v. North Dakota Workers Compensation Bureau,* 447 N.W.2d 489 (1989); and now this majority opinion each reiterate the broad assertion. Unfortunately, none of these decisions have carefully looked at the role of the burden of proof in ending benefits.

That issue was not involved in *Gramling, supra,* because he was seeking reinstatement of disability after having returned to work for awhile. Like an initial claimant, Gramling had the burden of persuading the Bureau that his disability had returned. Thus, our *Gramling* decision did not study the proper placement of the burden of proof for ending benefits. So also, our following statements have been dicta, neither dictated by the facts of the cases decided nor derived from adversary presentations.

A prime function of the burden of proof is to fairly allocate the risk of nonpersuasion. 9 Wigmore, Evidence § 2485 (Chadbourn rev. 1981). *See Sunderland v. North Dakota Workmen's Compensation Bureau,* 370 N.W.2d 549, 552 (N.D.1985). When a workers compensation claimant has established disability, the universal rule is that the risk of nonpersuasion to end benefits should be on the employer and the Bureau. "The burden of proof of showing a change in condition is normally on the party, whether claimant or employer, asserting the change, although, in some cases, the burden may shift to the other party once the movant has established his case." 3 Larson's Worker's Compensation Law, § 81.33(c) (1989) (footnotes omitted). The burden of proof is similarly applied for ending other forms of disability benefits. 70A Am.Jur.2d *Social Security and Medicare* § 690 (1987). There is a need to safeguard against the risk of erroneous deprivation of continuing benefits. *See Beckler v. North Dakota Workers Compensation Bureau,* 418 N.W.2d 770 (N.D.1988). Since the claimant has proven his entitlement to benefits, it is the Bureau that should be expected to prove a change of condition to reopen an award.

But, the subject of the burden of proof was not argued in this case. It has not been fully developed and argued to this court in any case. Nevertheless, there is reason aplenty to place the burden of persuasion for ending benefits upon the Bureau, not the claimant. Therefore, we should consider this subject more carefully when it is clearly and fully presented to us. Until then, I decline to join in those parts of the majority opinion which seem to say that the claimant failed in her proof. It is enough for me that this record supports the Bureau's determination that Risch was

capable of beginning work but improperly refused to try.