330 N.W.2d 498 (1983)
In the Matter of the Claim of Maynard L. BROMLEY for Compensation From the North Dakota Workmen's Compensation Fund.
Maynard L. BROMLEY, Appellant,
v.
NORTH DAKOTA WORKMEN'S COMPENSATION BUREAU, Appellee.
Civ. No. 10293.
Supreme Court of North Dakota.
February 10, 1983.
*499 Tebelius Law Firm, Harvey, for appellant; argued by John J. Tebelius, Harvey.
Joseph F. Larson II, Asst. Atty. Gen., N.D. Workmen's Compensation Bureau, Bismarck, for appellee.
PAULSON, Justice.
Maynard L. Bromley appeals from a judgment of the District Court of Wells County entered on July 19, 1982, affirming an order of the North Dakota Workmen's Compensation Bureau [Bureau] which denied his claim for medical and disability benefits. We affirm.
Bromley was hospitalized in the St. Aloisius Hospital in Harvey from March 22, 1978, through April 7, 1978, for treatment of thrombophlebitis in his left leg. On April 11, 1978, Bromley filed a claim with the Bureau seeking medical expenses and disability benefits and alleging that the injury which caused the thrombophlebitis occurred during the early morning hours of March 22, 1978, when, during the course of restacking a cooler at his job at the Pioneer Bar in Harvey, one of the beverage cases he was carrying slipped and hit his left leg on the inner side of his thigh.
The Bureau, after considering the claim and examining the evidence without a formal hearing, issued an order dismissing the claim on June 13, 1978. Bromley petitioned for a rehearing and, after a formal hearing was held on November 20, 1978, the Bureau again entered an order dismissing his claim because it found that the injury had not occurred in the course of Bromley's employment.
The Bureau's decision denying benefits was based in part upon the reports of Bromley's attending physician, Dr. Steven Ching. Although Bromley asserted that he told the doctor about his accident involving the beverage cases when he was admitted to the hospital later in the day on March 22, 1978, Dr. Ching's "History and Physical" report of March 22, 1978, stated, in part, that Bromley:
"... had been in recently good health until one week prior to admission when he had the onset of left thigh pain. The pain gradually progressed and increased in intensity. He noted some erythemia [sic] of the medial aspect of his left thigh. Several days prior to admission this erythemia [sic] descended and he felt that his left leg was swollen. Because of the increasing severity of the pain and persistence of the symptoms, he sought medical attention today."
Dr. Ching's "Attending Physician's Report" to the Bureau also contained the following question and response:
"Are you satisfied there is no misrepresentation or malingering in this case?

*500 "No.
. . . . .
"Re: Misrepresentation: The patient mentioned nothing about injuring himself at work until 4 days prior to discharge from the hospital."
However, in the same "Attending Physician's Report", Dr. Ching responded affirmatively to the question "Is present disability due to an occupational disease or injury?"
Following the district court's affirmance of the Bureau's order dismissing his claim, Bromley appealed to this court. In an opinion dated March 25, 1981, we held that because of these discrepancies in Dr. Ching's report to the Bureau, and because the Bureau relied only upon the part of the report favorable to its decision, the Bureau's decision was not supported by a preponderance of the evidence. Claim of Bromley, 304 N.W.2d 412 (N.D.1981). Accordingly, in Claim of Bromley, supra 304 N.W.2d at 418, we remanded the case to the Bureau for further proceedings:
"... to clarify the discrepancies in Dr. Ching's history and medical report to the Bureau with either direct testimony of Dr. Ching by deposition or by affidavit in response to questions submitted by both parties. Both parties should be permitted to formulate questions pertaining to the extent of Dr. Ching's interrogation of Bromley regarding the cause of his thrombophlebitis and any other pertinent questions which will tend to clarify or answer the basic question whether or not Bromley sustained an injury in course of employment."
By this time, Dr. Ching had moved to Rochester, New York. Both parties sent a series of questions to Dr. Ching concerning the discrepancies in his "History and Physical" report relating to Bromley and the subsequent "Attending Physician's Report" given to the Bureau. Dr. Ching responded by affidavit, in part, as follows:
"Mr. Maynard Bromley gave me two different histories on two different occasions and I was unable to determine which history was accurate. If one assumes the second history to have been accurate, then the injury was sufficient to give rise to the condition diagnosed.
"The first history was one of onset of left thigh pain one week prior to admission. Again, I was unable to determine which history given was accurate.
"I agree with the Bureau's conclusion; while I did not determine definitively which history was accurate, the first history seemed to me to be more plausible since the second history was not given until four days prior to discharge." [Emphasis in original.]
Based upon the doctor's responses to the questions,[1] and the entire record in the case, the Bureau issued its Order Affirming Dismissal on September 22, 1981, once again concluding that Bromley had failed to prove that his injury arose out of and in the course of his employment.[2] Bromley did *501 not petition for a rehearing to present additional evidence in support of his claim, but appealed the Bureau's order to the district court. The District Court of Wells County affirmed the Bureau's order and judgment was entered on July 19, 1982. Bromley appeals from this judgment.
Bromley asserts that Dr. Ching's testimony, taken pursuant to our remand of this case in the prior appeal, was insufficient to clarify the discrepancies found in his "History and Physical" report and "Attending Physician's Report" to the Bureau, and, thus, the Bureau erred in concluding that his injury did not occur in the course of his employment and that he was not entitled to disability and medical benefits.
In order to prove a right to participate in benefits available from the Bureau, the claimant, pursuant to § 65-01-11 of the North Dakota Century Code, has the burden of proving by a preponderance of the evidence that he or she was injured in the course of employment and that the resulting disability is causally connected to that employment injury. See, e.g., Satrom v. North Dakota Workmen's Compensation Bureau, 328 N.W.2d 824, 827 (N.D.1982); Reynolds v. North Dakota Workmen's Compensation Bureau, 328 N.W.2d 247, 248 (N.D.1982); Roberts v. North Dakota Workmen's Comp. Bur., 326 N.W.2d 702, 705 (N.D.1982). We review the findings of the Bureau rather than the findings of the district court and are bound to affirm the decision of the Bureau unless its findings of fact are not supported by a preponderance of the evidence or its conclusions of law are not supported by its findings of fact. Robert v. N.D. Workmen's Comp. Bureau, 321 N.W.2d 501, 502 (N.D.1982); Davis v. North Dakota Workmen's Comp. Bureau, 317 N.W.2d 820, 822 (N.D.1982); § 28-32-19, N.D.C.C. The "preponderance of the evidence" standard has been defined as "evidence more worthy of belief", or "the greater weight of the evidence", or "testimony that brings the greater conviction of the truth". Power Fuels, Inc. v. Elkin, 283 N.W.2d 214, 219 (N.D.1979).
During the formal hearing held on November 20, 1978, Dr. Marvin J. Towarnicky[3] *502 testified that thrombophlebitis is a condition in which blood clots form inside of a vein. Dr. Towarnicky also testified that physical injury is not the only cause of thrombophlebitis, and that it may result from a number of causes, including varicose veins, cancer, dehydration, complications with delivery, pelvic surgery, and injury or trauma to the vein. The doctor further testified that Bromley had varicose veins. It is apparent from Dr. Towarnicky's testimony that a person with varicose veins, such as Bromley had, could develop thrombophlebitis as a result of their being hit with an object. However, the doctor also testified that he had treated Bromley two months after Dr. Ching had done so, and at that time Dr. Towarnicky could not determine the cause of Bromley's thrombophlebitis.
The claim in the instant case rests primarily upon Bromley's testimony and his assertion that Dr. Ching either failed to make a proper inquiry into the etiology of Bromley's thrombophlebitis at the time of treatment, or failed to include in his "History and Physical" report of March 22, 1978, the fact that Bromley had at that time informed him of the incident with the beer cases at the Pioneer Bar. Bromley's counsel further argues that it is "not reasonably conceivable" that Bromley did not inform Dr. Ching of the accident during his initial examination on March 22, 1978, because it is the natural tendency of a person who is injured in such a fashion to reveal that fact the moment he consults a doctor.
The Bureau has the responsibility and duty to pass upon the credibility of the witnesses appearing before it, including that of the claimant; and to weigh the testimony with other evidence which is presented and made part of the record. Reynolds v. North Dakota Workmen's Compensation Bureau, supra, at 249; Larson, Workmen's Compensation Law, § 80.20, at 15-385 (1982). While the Bureau may not make credibility findings in order to foreclose a claimant's chances for a successful appeal, such findings of fact will be upheld as long as they are supported by a preponderance of the evidence in the record. Inglis v. North Dakota Workmen's Comp. Bureau, 312 N.W.2d 318, 323 (N.D.1981). See also Satrom v. North Dakota Workmen's Compensation Bureau, supra at 831; Gramling v. North Dakota Workmen's Comp. Bur., 303 N.W.2d 323, 329 (N.D.1981).
We believe that the Bureau's finding of fact XV "That the claimant was evasive; his testimony was totally self-serving and he lacked credibility" is supported by the preponderance of the evidence in the record. Bromley testified that he reported the alleged injury to his employer prior to seeking medical attention on March 22, 1978. Leroy Bromley, owner of the Pioneer Bar and the claimant's brother, testified to that effect at the formal hearing. However, a further review of the transcript of the formal hearing reveals that the claimant was vague and evasive when questioned about his work history and the possibility of working on a part-time basis in the future. We also note that Dr. Towarnicky, when asked to read Dr. Ching's admission notes relating to the claimant's hospitalization, omitted the history indicating that Bromley had had left thigh pain for approximately one week prior to his admission date. These factors, when coupled with Dr. Ching's responses to the questions designed to clear up the discrepancies in his previous reports,[4] could *503 cast doubt on the credibility of Bromley and on the validity of his claim for benefits.
We do not agree with Bromley's argument that Dr. Ching's affidavit was insufficient to clarify the discrepancies found in his "History and Physical" report and "Attending Physician's Report" to the Bureau. Bromley asserts that Dr. Ching's statement that he agrees with the Bureau's conclusion denying benefits is irrelevant because we held, in the prior appeal, that the Bureau's decision was not supported by a preponderance of the evidence. We might agree that such a response, by itself, would have been insufficient to clarify the discrepancies. It creates no problems, however, when read in the context of his entire answer, the thrust of which is that Dr. Ching believed the first history given by Bromley because the second history was not given until four days prior to his discharge.
The underlying premise of Bromley's argument appears to be that Dr. Ching failed to make a proper inquiry of Bromley at the time he first examined him on March 22, 1978. Dr. Towarnicky testified that Dr. Ching's initial history was deficient because it did not contain notations relating to "negative" findings concerning causes for Bromley's thrombophlebitis. Dr. Towarnicky explained that a "negative" finding referred to possible causes of thrombophlebitis which were not present with a particular patient. The following are Dr. Ching's responses to questions submitted by Bromley's counsel in regard to the extent of his initial inquiry into the cause of Bromley's thrombophlebitis:
"[Q] 4.a. Did you inquire into the ecology [sic] of thrombophlebitis?
"[A] Etiology?Yes.
"[Q] b. If so, what questions did you ask Mr. Bromley touching upon the cause of thrombophlebitis?
"[A] Asked if he fell, was unconscious.
"[Q] c. What answers were given in response to your questioning?
"[A] He said no.
. . . . .
"[Q] 8.b.... did you ask Mr. Bromley questions intended to reveal both positive and negative aspects of the cause of this condition? If so please relate the questions you asked and the answers you received in response? ...
"[A] 8.b. I had no independent recollection of questions asked Mr. Bromley but customarily I would ask whether there had been antecedent trauma, unusual bruising, symptoms such as shortness of breath, leg swelling, chest pain, recent weight loss, GI disturbances, family blood clotting abnormalities, etc. I believe his responses were negative with the exception of some mention of peptic ulcer disease in response to inquiry as to GI disturbances."
Although it appears that Dr. Ching did not specifically ask Bromley whether or not his thrombophlebitis resulted from being hit with an object, we believe the Bureau could reasonably conclude that Dr. Ching's questions relating to whether or not Bromley "fell" or "was unconscious" would be sufficient to evoke a response from Bromley concerning his alleged accident at the Pioneer Bar. Whether or not Bromley actually informed Dr. Ching of the accident during the initial examination on March 22, 1978, as Bromley claims he did, and Dr. Ching for some reason failed to include it in his "History and Physical" report are questions of fact for the Bureau to decide. As such, these determinations will not be disturbed on appeal unless they are not supported by a preponderance of the evidence in the record. § 28-32-19(5), N.D.C.C. The probability that we might not have reached the same conclusion as did the Bureau is irrelevant. We believe the circumstances of this case, including the fact that Bromley has a financial interest at stake, whereas Dr. Ching does not, could lead the Bureau to conclude that Bromley was being less than *504 truthful in asserting that his injury was caused by the alleged incident at work.
The following rationale of our court in Reynolds v. North Dakota Workmen's Compensation Bureau, supra at 250-51, is equally applicable in the instant case:
"In this instance there are inconsistencies between Reynolds' testimony and other evidence in the record. The Bureau had a right to take all of these inconsistencies into consideration in determining and weighing the evidence, particularly the testimony of Reynolds. If the Bureau, upon the foregoing evidence, decides to discredit Reynolds' testimony under the principles of law stated earlier herein, we are in no legal position to conclude that the Bureau erred in doing so. Taking into account the inconsistent testimony and circumstantial evidence in this case, we are not in a position to legally conclude that the Bureau's findings of fact are not supported by the preponderance of the evidence."
Upon reviewing the entire record before us, and giving deference to the opportunity of the Bureau to observe the testimony of the witnesses and weigh its credibility, we conclude that the Bureau's findings of fact are supported by the preponderance of the evidence and that its conclusions of law are sustained by its findings of fact.
For the reasons stated in this opinion, the judgment of the district court is affirmed.
ERICKSTAD, C.J., and PEDERSON and VANDE WALLE, JJ., concur.
SAND, Justice (concurring specially).
After a careful examination of the record, I am inclined to agree with the result of the majority opinion, not on the basis that the Workmen's Compensation Bureau's decision is correct or that the claimant had received a fair hearing, but rather on the basis of the existing posture and polarization that has developed, convincing me that further proceedings would be merely expensive and time-consuming but would not produce answers which would be more indicative of producing a fair and just disposition the claim. These are not the normal results, but are developments which, in my opinion, to a great degree, are attributable to the procedures employed by the Bureau. As an example, in submitting the questions to Dr. Ching, who treated the claimant, the letter contained numerous statements, such as ". . . Bureau agreed with your statement relative to misrepresentation, because ..." "... it was the Bureau's impression that the injury on March 21 if in fact did occur was not responsible for the thrombophlebitis. . ." and ". . . according to Dr. Towarnicky at least depending upon which of the statements one reads, varicose veins in and of themselves would not result in thrombophlebitis without some external trauma. Do you agree. . . ." These types of questions, coupled with the foundation statements in the letter in which the questions were transmitted seek biased answers and discourage objective answers, whereas the opposite should be the rule. In this respect a pertinent single question whether or not the claimant reported any physical injury would have been appropriate, or a further question whether or not the doctor asked the claimant at any time if he sustained an injury and what the answer was to such question. For example, if the claimant had stated to the Doctor that he did not receive an injury that would have put an end to the entire case.
In addition, the Bureau relied upon and used an unsworn report made by its investigator which was detrimental to the claimant. The investigator was not called as a witness. See, Williams Electric Coop v. Montana Dakota-Utilities Co., 79 N.W.2d 508, 523 (N.D.1956); 2 Am.Jur., Administrative Law, § 382; 73 C.J.S., Public Administrative Bodies and Procedure, § 125. The report contained inadmissible hearsay and conclusions, as well as incompetent evidence. (I am not saying that the investigator was or is incompetent but that the report was not competent evidence, particularly where the investigator was not called as a witness.)
*505 The North Dakota Legislature, in NDCC § 28-32-07, as initially adopted and as amended, sets forth the minimal requirements that an administrative agency must meet in receiving or using material as evidence. I am sure that the Legislature was aware that administrative agencies are not bound by the strict rules of evidence, but, nevertheless, in order to insure that the hearing is fair and just minimum procedures are required so that the parties are informed of what the evidence will be and are given an opportunity to assess it, and, if necessary, to present evidence in opposition. The record does not disclose that the Bureau complied with NDCC § 28-32-07. This becomes more significant when the credibility of the claimant is a primary or sole factor involved in resolving the compensability of the claim.
The law does not prevent the Bureau from employing an investigator to obtain information on a claim or to prepare for a hearing. But a substantial legal distinction exists in employing an investigator for discovery purposes as distinguished from admitting into evidence the unsworn report containing conclusions and impressions of other persons which may have a direct bearing on the claim.
NOTES
[1] An addendum to Dr. Ching's initial history also states in part as follows:
 /?
 March

"The patient related to me on April 3, 1978 that prior to his admission he had an accident two days to three days ago at work at which some beer cases fell on his left leg. After the injury, the left thigh became erythematous and tender. It continued to worsen until he sought my care on March 22, 1978."
In response to the Bureau's subsequent request that he explain why "April" was struck out and "March" inserted in its place, Dr. Ching stated in his affidavit:
"April 3, 1978 was the correct date; whether the work [sic] April was struck out and the word March inserted when I signed the addendum to history or whether this was done later I do not now know."
[2] The Bureau's findings of fact and conclusions of law state, in pertinent part, as follows:

"FINDINGS OF FACT
. . . . .
"V.
"That the claimant's condition was diagnosed as thrombophlebitis, left leg, alcoholism, and gastrointestinal tract bleeding due to peptic ulcers disease.
"VI.
"That the claimant began experiencing an onset of left thigh pain one week prior to his admission to the hospital and that several days prior to that admission his erythemia [sic] descended and claimant felt that his left leg was swollen.
"VII.
"That the claimant has varicose veins.
"VIII.
"That Dr. Ching has verified that the first history given him by the claimant was that he had the onset of left thigh pain one week prior to his hospital admission.
"IX.
"That Dr. Ching has verified that the claimant did not change his history until four days prior to his hospital discharge.
"X.
"That Dr. Ching dictated an addendum to his medical report in this case on April 7, 1978, and, in response to a question regarding a change in the report from April 3, 1978 to March 3, 1978, as the date the claimant gave his second history, Dr. Ching verified that the correct date was April 3, 1978.
"XI.
"That Dr. Ching agrees with the Bureau's conclusion regarding medical history.
"XII.
"That Doctor Towarnicky first saw Mr. Bromley on May 19, 1978, two months after the alleged injury, and that there were no clinical findings that indicated that an injury had occurred.
"XIII.
"That the claimant's varicose veins were a previous and predisposing factor to thrombophlebitis.
"XIV.
"That, insofar as the evidence of the claimant and Doctor Towarnicky contradicts that of Doctor Ching, the original treating physician, it is rejected.
"XV.
"That the claimant was evasive; his testimony was totally self-serving and he lacked credibility.
"XVI.
"That the claimant's condition did not result from an injury at work.
"CONCLUSIONS OF LAW
"I.
"That the claimant has failed to prove that he suffered an injury by accident arising out of and in the course of his employment.
"II.
"That the claimant has failed to prove that his condition is causally related to an employment injury.
"III.
"That the claimant has failed to prove that he is entitled to benefits under the North Dakota Workmen's Compensation Act in connection with his condition."
[3] Bromley, Dr. Towarnicky, and Leroy Bromley, the claimant's brother and employer, testified at the hearing. Dr. Ching, having moved out of the area, did not testify at the hearing.
[4] The discharge diagnosis in Dr. Ching's "Discharge Summary" dated April 7, 1978, contains a notation that Bromley was suffering from alcoholism, in addition to thrombophlebitis and gastrointestinal tract bleeding "2 degrees to peptic ulcer disease". Bromley emphatically denies ever having been an alcoholic. We find no legal significance, in the context of the present case, in the ultimate determination of whether or not Bromley was an alcoholic during this period of time. Counsel for the Bureau admitted that nothing in the record suggests that alcoholism may cause the type of injury involved in the present case. Furthermore, although the Bureau in its brief sets forth the provisions of § 65-01-02(8), N.D.C.C., which states, in part, that an employment "injury" shall not include "any injury received because of the use of ... intoxicants while in the course of the employment", we have found no evidence in the record indicating that Bromley was using intoxicants during the evening and early morning hours before his alleged injury at the Pioneer Bar.