**Wayne A. SMITH**

v.

**DEXTER OIL COMPANY and Liberty Mutual Fire Insurance Company.**

Supreme Judicial Court of Maine.

Argued March 9, 1981.

Decided July 20, 1981.

C. W. and H. M. Hayes, Robert S. Lingley (orally), Dover-Foxcroft, for plaintiff.

Rudman & Winchell, Michael P. Friedman, William S. Wilson, Jr. (orally), Bangor, for defendant.

Before McKUSICK, C. J., and GODFREY, NICHOLS, GLASSMAN * and ROBERTS, JJ.

ROBERTS, Justice.

On February 8, 1977, employee-appellant Wayne Smith was struck on the head and neck by ice sliding from the roof of a house where, apparently, he was delivering oil for his employer, Dexter Oil Company. Pursuant to an approved agreement, Smith began receiving compensation for total disability.

On October 11, 1977, Dexter Oil filed with the Workers' Compensation Commission a petition for review of incapacity. Seventeen months later, in a decision issued March 21, 1979, the commissioner granted the petition and terminated compensation. From a pro forma decree affirming the

---

* Glassman, J., sat at argument and participated in conference but died before the opinion was adopted.

1979 decision, Smith timely appealed to this Court. We vacated the pro forma decree and remanded for a clarification of the commissioner's decision. *Smith v. Dexter Oil Co.*, Me., 408 A.2d 1014 (1979).

Pursuant to the order of remand, on March 25, 1980, the commissioner made further findings of fact and conclusions of law on the basis of the original record. Again he terminated compensation, his order taking effect retroactively from the date of the 1979 decision. The instant appeal is from a pro forma decree affirming the March 25, 1980, decision.

The original record, which was assembled at hearings held in March and November of 1978, consists of testimony from Smith and three expert medical witnesses. Smith testified that since the injury he had been experiencing a constant dull pain that, after brief periods of exertion, would increase to the point of causing severe headaches and numbness in his left arm.

One medical witness, Dr. Rowland Pritchard, saw Smith in September, October, and November of 1977 and once in March of 1978. He testified that, although a neurological examination and x-rays were normal, the February 1977 ice incident had caused a soft tissue injury, or contusion, to the supporting ligaments of the cervical region. Dr. Pritchard felt that by November, 1977, Smith had recovered sufficiently to be able to work part time in a job that did not entail heavy lifting or persistent use of the upper extremities.

A second medical witness, Dr. John Diggs, testified by a duly admitted deposition that he had examined Smith in June, 1977, and, after determining that Smith's muscle strength, range of motion, and reflexes were normal, had at that time concluded that Smith was "a patient who complains of pain without objective findings of a physical disability." Dr. Diggs believed that Smith could return to full time work with no physical restrictions on his capacity.

The last medical witness to give evidence, Dr. Stuart Clayman, is a clinical psychologist called by Smith's counsel. In July, 1978, Dr. Clayman ran a battery of psychological tests on Smith, from which he diagnosed a chronic neurotic condition with a strong tendency to develop physical symptoms, such as headaches, backaches, and weakness, after long periods of stress. "[T]he physical trauma of February, 1977," in Dr. Clayman's view, "and the physical impairment that resulted were causal factors in . . . [Smith's] current disabling emotional condition," probably precipitating or aggravating his underlying emotional disability. That disabling emotional condition, according to Dr. Clayman, "might interfere" with Smith's ability to concentrate on whatever job happened to confront him.

■ From this record, the commissioner on remand found, first, that in the course of his employment with Dexter Oil, Smith had sustained a contusion of his head and neck when struck by ice in February, 1977; second, that prior to the date of the first decision, March 21, 1979, Smith had recovered, with legally insignificant minimal limitations, "his pre-accident physical ability" to engage in gainful employment; third, that:

> Mr. Smith *is afflicted with a chronic neurotic condition which is disabling to an unspecified degree, but the evidence does not indicate with sufficient degree of certitude* [emphasis added] . . . that because of that condition Mr. Smith is *unable to engage in gainful employment* or that his pre-accident work capacity continues to be reduced [emphasis in original].

Subsequently, pursuant to 39 M.R.S.A. § 99, Smith moved for further findings of fact and conclusions of law. In that motion, Smith asked, *inter alia,* (1) whether his chronic neurotic condition existed prior to the February 8, 1977, ice incident; (2) whether the ice incident aggravated his chronic neurotic condition; (3) on what factual basis the commissioner could conclude

that the neurotic condition no longer affected his work capacity; and (4) whether the employer had met his burden of proving that the employee's incapacity for work had ceased.

The commissioner answered, respectively, that Smith's chronic neurotic condition probably preexisted his February 8, 1977, injury; that the work-related injury did not aggravate that condition "to any measurable degree;" that the evidence was "not . . . sufficient . . . to conclude that Wayne Smith's chronic neurotic condition reduced his work capacity after February 8, 1977; " and that Dexter Oil had met its burden of proving that Smith's incapacity for work had ceased. We reverse.

Our reversal is based upon the combined consequences of three facts. First, it is clear from the above that the commissioner determined that Smith still suffered at the time of the decree from partial disability, namely, "a chronic neurotic condition which is disabling to an unspecified degree." [1] Second the approved agreement executed by the parties after the 1977 ice incident is not before us. Since it was the employer who filed the petition for review of incapacity, it was the employer who bore responsibility for placing the approved agreement in the record. Third, no medical evidence was introduced by the employer comparing Smith's chronic neurotic condition at the time of execution of the agreement to that condition at a later time. The only evidence on Smith's neurosis that was introduced came by way of Smith's own witness, and it tended to establish that the mental or emotional effects of the ice incident continued unabated.

■ In a petition for review of incapacity, the employer has the burden of proving that the effects of a compensable injury have diminished or ended. *Hamilton v. Dexter Shoe Co.,* Me., 402 A.2d 854, 856 (1979); *Soucy v. Fraser Paper, Ltd.,* Me., 267 A.2d 919, 921–22 (1970). When prior

---

**1.** It is also clear that the burden of proving a causal relationship between that partial disability and the February, 1977, ice incident was placed by the commissioner directly upon Smith. *See* note 5, *infra.*

compensation for total incapacity has been based on an approved agreement that does not specify the nature and degree of the worker's disability—or, as here, does not appear of record[2]—the employer must carry that burden, first, by introducing evidence of the extent of the worker's disability on the date of execution of the agreement and, second, by introducing comparative evidence showing that the worker's medical condition has subsequently improved. *Deloge v. Forster Manufacturing Co., Inc.*, Me., 429 A.2d 1012 (1981); *Haney v. Lane Construction Corp.*, Me., 422 A.2d 1292 (1980); *Hafford v. Kelly*, Me., 421 A.2d 51 (1980).

The only exception to the comparative evidence requirement arises when the employer attempts to prove not a mere diminution, but a total disappearance, of the work-related disability. *See Curtis v. Bridge Construction Corp.*, Me., 428 A.2d 62 (1981). That exception is not here pertinent. Although one of the employer's witnesses, Dr. Diggs, stated that Smith had wholly recovered his pre-injury *physical* capacity to work, his testimony was silent concerning the disabling neurotic condition that, according to the commissioner, probably preexisted the ice incident and continued to plague Smith at the time of the hearing. Without having the approved agreement before us, we cannot tell what, in the parties' view, was perceived to have been the nature of Smith's compensable disability.[3] The parties may have agreed that that disability was exclusively physical. On the other hand, they may have agreed that it was in part physical and in part mental, that is, in part a contusion and in part a neurosis precipitated or aggravated by the effects of the contusion.[4] Because the employer failed to introduce any evidence showing that a work-related aggravation or precipitation of a pre-existing mental condition had ceased or, as the case may be, that such a condition simply did not exist, the exception to the comparative evidence requirement announced in *Curtis* does not apply.[5]

For the above reasons, the commissioner erred in concluding that the employer had met its burden of proof. Because there is no comparative evidence from which the

---

**2.** We recently had occasion to remark on the danger of failing to provide the Law Court with a copy of the approved agreement. *Marquis v. Keyes Fibre Co.*, Me., 428 A.2d 69, 70 n. 2 (1981). Our observation in *Marquis* bears repeating here.

**3.** Assuming, without deciding, that an unambiguous summary of an approved agreement appearing in a subsequent Commission decree could obviate the necessity of placing the agreement in the appellate record, the commissioner's reference to the approved agreement in this case gives us little help. The commissioner stated:

> By virtue of an approved Agreement dated May 9, 1977, the parties agree that Wayne Smith was entitled to *compensation for total disability resulting from a* contusion of his head and back sustained on February 8, 1977.

(Emphasis added.) From this language, it is impossible to tell whether the "total disability resulting" from the contusion did or did not have a mental as well as a physical component.

**4.** A "mental disability" is no less compensable than a "physical disability." *See, e. g., Townsend v. Maine Bureau of Public Safety*, Me., 404 A.2d 1014 (1979) (mental disability causally-connected to gradual, work-related mental trauma); *McLaren v. Webber Hospital Ass'n*, Me., 386 A.2d 734 (1978) (mental disability causally connected to "sudden," work-related mental trauma); *Reynold's Case*, 128 Me. 73, 145 A. 455 (1929) (mental disability causally connected to work-related physical trauma).

**5.** The commissioner, as factfinder, was certainly free to accept only such parts of the testimony of Smith's witness, Dr. Clayman, as he found credible. *See, e. g., Bradbury v. General Foods Corp.*, Me., 218 A.2d 673, 674–75 (1966). But the commissioner was not free to ignore the comparative evidence requirement.

If the approved agreement had been in the record and *if* that agreement had unambiguously specified that Smith's disability was exclusively physical, Dr. Diggs' testimony that Smith had *physically* recovered would have averted the need for comparative evidence. *Curtis v. Bridge Construction Corp.*, Me., 428 A.2d 62 (1981). The question in that case would have been whether Dexter Oil or Smith himself should then have borne the ultimate burden of persuading the commissioner that a subsequently detected disabling neurosis was aggravated or precipitated by the ice incident of February 7, 1977. In this case, however, we neither decide nor intimate any opinion on that question.

commissioner could find that the employer had met his burden, we must direct entry of an order denying the petition for review of incapacity.

The entry must be:

Pro forma judgment set aside.

Remanded to the Workers' Compensation Commission for entry of an order denying the petition for review of incapacity.

It is ordered that the employer pay to the employee an allowance of $550 for his counsel fees, plus his reasonable out-of-pocket expenses for this appeal.

All concurring.