Argued and submitted June 1, reversed and referee's order reinstated July 22, 1987

In the Matter of the Compensation of
Delbert E. Norton, Claimant.

NORTON,
*Petitioner,*

*v.*

SAIF CORPORATION et al,
*Respondents.*

(WCB 82-04904; CA A41192)

739 P2d 1058

Robert K. Udziela, Portland, argued the cause for petitioner. With him on the brief were David A. Hytowitz, Portland, and Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland.

Darrell E. Bewley, Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Warden, Presiding Judge, and Van Hoomissen and Rossman, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Claimant seeks review of a Workers' Compensation Board order reducing his permanent total disability award to 50 percent unscheduled permanent partial disability.[1] He contends that the Board erred in concluding that he is no longer totally disabled. We reverse.

Claimant sustained a compensable injury to his back in 1968 while working on the green chain. He was awarded permanent total disability in 1971. In April, 1981, the Evaluation Division found no change in his status and ordered that his permanent total disability benefits continue. In September, SAIF requested another reevaluation. The Division again found no change and ordered that his permanent total disability benefits continue.

In April, 1982, claimant was examined, at SAIF's request, by Dr. Cramer at the Northwest Pain Center. Cramer reported that claimant "will continue to exhibit himself as a totally and permanently disabled person. It is unlikely that any form of medical treatment would significantly alter his current condition." Northwest Pain Center's multidisciplinary team reported, *inter alia,* that claimant exhibited a great deal of subjective pain, that his physical findings do not corroborate the level of pain, that he is of borderline to low average intelligence and is illiterate, that he and his wife are committed to his role as a disabled individual and that it is unlikely that he would ever give up that role. The staff concluded, in relevant part:

"On objective grounds, [claimant] is not totally and permanently disabled on a physical basis, although he sees himself as totally and permanently disabled and it is our feeling that he intends to remain that way."

On May 19, a determination order issued, which stated:

---

[1] ORS 656.206(1)(a) provides:

" 'Permanent total disability' means the loss, including preexisting disability, of use or function of any scheduled or unscheduled portion of the body which permanently incapacitates the worker from regularly performing work at a gainful and suitable occupation. As used in this section, a suitable occupation is one which the worker has the ability and the training or experience to perform, or an occupation which the worker is able to perform after rehabilitation."

"The Department now finds that you are no longer permanently and totally disabled, and that you are entitled to no award of permanent partial disability."

That order was based on all the medical reports generated in the claim and on surveillance films of claimant. Claimant requested a hearing.

In April, 1983, SAIF referred claimant to Dr. Olmscheid. He reported that it is difficult to examine claimant due to "severe functional disturbance" and that that condition has been noted in his records since the late 1960's. He concluded that claimant's condition had not changed significantly since 1969. He seriously doubted that claimant "could be gainfully employed in any variety of substantial or suitable work." In October, a vocational rehabilitation consultant reported that claimant was 63 years old, had a third grade education and was illiterate, that his previous work roles relied on physical strength, that he could not be expected to return to work and that new skills training was not feasible.

The referee viewed three reels of film taken between November, 1981, and May, 1982.[2] They revealed that claimant could walk, drive a motor vehicle and spend 18 minutes mowing his law. The referee stated, in relevant part:

"While it is obvious that claimant does not always use a cane as he indicated to the examiners at Northwest Pain Center, I am not persuaded that this fact nor the level of activity exhibited by claimant in the films would enable him to suddenly be gainfully and suitably employed.

"There is no indication that his IQ has been elevated above its 1960's level. There was introduced no evidence which would indicate claimant was less illiterate now than in 1971 or November of 1981. There is no evidence that his stamina would allow him to work all day long. Indeed at times it seemed he was locked in mortal combat with his lawn mower and that at any time he was sure to succumb.

"He is, however, about 13 years older. Between temporary disability payments and permanent disability payments,

---

[2] *See* ORS 656.206(5). The referee considered only those films made before May 19, 1982, the date of the determination order. He refused to consider any subsequent films. The Board concluded that, because disability is rated as it exists at the time of the hearing, *see Gettman v. SAIF,* 289 Or 609, 614, 616 P2d 473 (1980), all of the films could be considered. We agree with the Board.

claimant has been dependent upon workers' compensation from about age 48 to age 64; 16 years; one-quarter of his life."

The referee concluded:

"I am persuaded by the evidence as a whole that claimant was as permanently and totally disabled when the permanent total status was revoked, if not more so, than when the permanent total disability status was first granted, and certainly as disabled as he was in November 1981 when his permanent total disability status was reaffirmed by the Evaluation division."

On review, the Board stated, in relevant part:

"On this entire record, we conclude that SAIF has not proved that claimant's medical condition has improved since he was awarded compensation for permanent total disability in 1971. SAIF's position, therefore, may only prevail if it has proved by a preponderance of the evidence that claimant is employable."[3]

Notwithstanding, the Board was impressed with SAIF's surveillance films:

"Contrary to claimant's statements reported in the medical and vocational documents that he always must use a cane or crutches to walk, that he had not driven a motor vehicle in over 13 years and that he can perform almost no physical activity due to disabling pain, are the surveillance films. These films show claimant walking without a cane, including walking up the steps to his home, driving his car, mowing his lawn, including an embankment, with a push mower, pushing and pulling a tent trailer, working in his yard and lifting and carrying boxes of building materials estimated to weigh at least 50 pounds each. Claimant was shown engaging in all of these activities without apparent discomfort.

"We conclude that the surveillance films represent persuasive circumstantial evidence that claimant is capable of performing some gainful and suitable employment that would include walking, standing, stooping, bending, pushing, pulling, climbing stairs and lifting and carrying objects weighing

---

[3] We agree with SAIF that "it is not required to prove that claimant's medical condition has improved since he was awarded compensation for permanent total disability in 1971." ORS 656.206 only requires a determination as to whether claimant is currently incapacitated from performing work at a gainful and suitable occupation. That may be indicated either by proof of improvement in the claimant's medical condition or by evidence of employability. *See Kytola v. Boise Cascade Corp.,* 78 Or App 108, 111, 714 P2d 1083, *rev den* 301 Or 765 (1986).

up to 50 pounds. This circumstantial evidence was not controverted at the hearing. Claimant did not appear or testify at the hearing. Any inference that the activities claimant is shown engaging in may have caused periods of increased disability or required long periods of rest is simply not supported by any evidence in the record. We conclude that SAIF has proved by a preponderance of the evidence that claimant is currently capable of performing some work at a gainful and suitable occupation. He is, therefore, not permanently and totally disabled."

The Board found that claimant had sustained a loss of earning capacity due to his industrial injury and should be awarded 50 percent unscheduled permanent partial disability. One member dissented. He concluded that, although the films demonstrated that claimant can do several things which he stated that he could not do, they do not demonstrate that he is able to perform a gainful and suitable occupation.

■■   The determination of permanent total disability status turns on "whether the claimant is currently employable or able to sell his services on a regular basis in a hypothetically normal labor market." *Harris v. SAIF,* 292 Or 683, 695, 642 P2d 1147 (1982). Because SAIF is attempting to terminate or modify claimant's award, it has the burden of proving "a change of circumstances sufficient to warrant the relief sought." *Harris v. SAIF, supra,* 292 Or at 690; *Kytola v. Boise Cascade Corp., supra* n 3, 78 Or App at 111; *Bentley v. SAIF,* 38 Or App 473, 590 P2d 746 (1979).

■   SAIF contends that its evidence shows that claimant is able to engage in activities that he claimed that he could not do, walk without a cane or crutches, bend, stoop, push, pull or lift, drive a car and dress and undress himself. However, that evidence does not establish that he is currently employable or that he will be able to sell his services on a regular basis in a hypothetically normal labor market. *See Petz v. Boise Cascade Corporation,* 58 Or App 347, 648 P2d 372, *rev den* 293 Or 521 (1982). Claimant is now 67 years old. He has been disabled since 1968. He has a third grade education and is functionally illiterate. He has a work history of unskilled or semi-skilled heavy physical labor. It is unlikely that he can be trained to acquire new skills.

The Board concluded that SAIF had not proved that

claimant's medical condition had improved since he was awarded compensation for permanent total disability in 1971. Notwithstanding that, the Board was persuaded by SAIF's surveillance films. The level of activity shown in SAIF's films does not persuade us that claimant is able to return to work. On *de novo* review, ORS 656.298, we conclude that SAIF has not proved that claimant is currently employable or that he is able to sell his services on a regular basis in a hypothetically normal labor market and that the Board erred in reducing claimant's permanent total disability award.

Reversed; referee's order reinstated.