**Victor KOPP, Appellant,**

v.

**NORTH DAKOTA WORKERS COMPENSATION BUREAU and State Director of Institutions, Appellees.**

**Civ. No. 900125.**

Supreme Court of North Dakota.

Oct. 31, 1990.

Dietz & Little, Bismarck, for appellant; Janell M. Knutson (argued).

Dean J. Haas (argued), Asst. Atty. Gen., North Dakota Workers Compensation Bureau, Bismarck, for appellees.

ERICKSTAD, Chief Justice.

Victor Kopp appeals from a judgment of the District Court for Morton County issued January 25, 1990, affirming the North Dakota Workers Compensation Bureau's order of July 26, 1989, affirming its order

of March 22, 1988, denying further benefits. We affirm.

In November of 1985 Kopp filed a claim for Workers Compensation benefits in connection with an injury which occurred in May of 1985. Kopp subsequently underwent surgery to repair a rotator cuff tear in his shoulder and the Bureau assumed liability for related medical and disability benefits. The Bureau continued to provide payments to Kopp until February of 1987, when it determined Kopp was no longer disabled. The Bureau issued its order denying further benefits on March 5, 1987. Thereafter, Kopp filed a timely request for rehearing dated April 3, 1987. The Bureau granted Kopp a formal hearing which was held on January 6, 1988. Prior to the hearing the Bureau deposed Doctors Ray Miller, Russell O. Saxvik, and Albert F. Samuelson. After the formal hearing the Bureau issued its order on March 22, 1988, affirming the order denying benefits.

In October of 1988, the district court ordered the Bureau to reconsider this matter in light of evidence provided by Dr. Craig DeGree. Thereafter, the parties agreed to obtain an independent psychiatric examination of Kopp. After reviewing evidence provided by Doctors Craig DeGree and Scott McNairy, the Bureau issued its order of July 26, 1989, affirming its order of March 22, 1988, affirming order denying further benefits. The matter was then appealed to the district court for decision. The district court determined that Kopp was entitled to recover disability benefits from February 4, 1987, through March 10, 1988, because of the Bureau's failure to provide pretermination due process, but it affirmed the decision of the Bureau to terminate the claimants benefits. This appeal followed.

Kopp asserts that the Bureau's findings cannot be supported by a preponderance of the evidence for the following two reasons: (1) the Bureau has incorrectly placed upon Kopp the burden of showing that he remains disabled and is entitled to disability benefits; and (2) the Bureau failed to resolve inconsistencies in the medical evidence.

I.

■ Kopp's first assertion is that the Bureau improperly placed upon Kopp the burden of showing that he remains disabled. Kopp contends that his "property interest" in the continued receipt of benefits creates a presumption of an entitlement which must be rebutted by the Bureau before termination of benefits. In support of this argument he urges us to rely upon this Court's prior recognition of property interests in cases concerning procedural due process, and upon case law stemming from statutory provisions of other jurisdictions.

It should be noted that this argument does not concern the trial court's determination that Kopp was entitled to recovery of benefits from February 3, 1987, through March 10, 1988, because the Bureau failed to provide notice and hearing prior to the termination of benefits. Instead, Kopp directs this argument toward the issue of whether or not he must carry the burden of proof during the termination hearing.

Kopp relies upon our prior decisions recognizing that the payment of Workers Compensation benefits give rise to a protectable property interest. *Beckler v. North Dakota Workers Compensation Bureau,* 418 N.W.2d 770 (N.D.1988). However, in *Beckler,* this Court was concerned with issues of procedural due process upon the termination of benefits. *Id.* at 772–74. We held in *Beckler,* that the Bureau's failure to provide adequate notice and hearing to the claimant before the termination of benefits deprived the claimant due process under the Fourteenth Amendment of the United States Constitution and Article I, § 12 of the North Dakota Constitution. *Id.* at 775. We do not find those principles to be in question here in the matter concerning who must carry the burden of proof during the termination hearing.[1] There-

---

1. The district court found that Kopp was entitled to disability benefits from February 3, 1987, through March 10, 1988, because the claimant's

benefits were terminated without notice and an opportunity to be heard. The Bureau concedes that *Forster v. North Dakota Workers Compensa-*

fore, we find that the principles established in *Beckler* have little application in determining whether or not the Bureau properly placed the burden of showing that he was currently disabled upon Kopp.

Kopp also seeks to support his property interest assertion by referring to a number of cases from other jurisdictions. *See C.D. Burnes Co. v. Guilbault*, 559 A.2d 637 (R.I.1989) (a discussion of R.I.Gen.Laws § 28–35–45 (1956)); *Williams v. W.C.A.B. (Montgomery Ward)*, 127 Pa.Cmwlth. 587, 562 A.2d 437 (1989) (holding 77 Pa.Const. Stat.Ann. § 732 (1989) places the burden of proof on the party seeking modification); *Kachinski v. W.C.A.B. (Vepco Const. Co.)*, 516 Pa. 240, 532 A.2d 374 (1987) (same); *Norton v. SAIF Corp.*, 86 Or.App. 447, 739 P.2d 1058 (1987) (an interpretation of Oregon worker's compensation law); *Pavel v. Hughes Bros, Inc.*, 167 Neb. 727, 94 N.W.2d 492 (1959) (holding the burden of proof is on the party seeking modification); *Oham v. Aaron Corp.*, 222 Neb. 28, 382 N.W.2d 12 (1986) (an interpretation of Neb. Rev.Stat. § 48–141 (1989)); *Smith v. Van's Equip. Co.*, 158 Ga.App. 460, 280 S.E.2d 870 (1981) (an application of Georgia law to the modification of worker's compensation awards); *Rourks v. Commercial Union Ins. Co.*, 497 So.2d 35 (La.App.1986) (an interpretation of LA Rev.Stat.Ann. § 23.1331 (1989)); *Smith v. Dexter Oil Co.*, 432 A.2d 438 (Me.1981) (an interpretation of Maine worker's compensation law); *Violette v. Midwest Printing–Webb Pub.*, 415 N.W.2d 318 (Minn.1987) (the 1983 addition to Minnesota law is a response to the burden which is placed upon the claimant when benefits were terminated by filing of a notice). These cases place the burden of showing that the claimant was no longer eligible for benefits upon the Bureau. This Court has long recognized that the rights of both employers and employees are purely statutory. *Waith v. Workmen's Compensation Bureau*, 409 N.W.2d 94, 97 (N.D.1987) (citing *Breitwieser v. State*, 62

N.W.2d 900 (N.D.1954)). In *Waith*, we said:

> "But the foregoing rationale of the Montana Supreme Court is simply inapplicable to this case, because the North Dakota Constitution has no counterpart to the construed Montana provision. Furthermore, the Montana subrogation statute, Section 39–71–414, of the Montana Code Annotated, does not include language similar to Section 65–01–09, N.D.C.C., which provides that the Bureau's subrogation rights apply 'to the extent of fifty percent of the damages recovered.' That language constitutes a legislative decision in this State to limit the Bureau's subrogation interest to a maximum of one-half of the amount actually recovered by a benefit recipient against a third-party tortfeasor. Montana law does not provide the same limitation."

*Waith*, 409 N.W.2d at 98. Kopp is relying upon decisions from jurisdictions that have enacted statutes which specifically provide, or have been interpreted to provide, that the burden of proof is on the Bureau to show that an employee is no longer entitled to benefits after having been previously determined to be entitled to benefits.

Our law does not so provide nor have we interpreted it to so provide. *Hayden v. Workers Compensation Bureau*, 447 N.W.2d 489, 496 (N.D.1989) (holding that the claimant must show that he/she is still disabled upon Bureau's termination of benefits). In *Waith*, we said the rights conferred on employers and employees under Worker's Compensation statutes are purely statutory and that the rationale of other courts in construing provisions of their workers compensation statutes is inapplicable when our laws do not contain a counterpart provision. *Id.* at 97, 98. Because our legislature has not enacted a provision shifting the burden of proof to the Bureau, we decline to adopt a rationale used by courts whose statutes more specifically jus-

---

*tion Bureau*, 447 N.W.2d 501 (N.D.1989), is dispositive of this issue. However, the claimant now attempts to apply the principles of due process found in *Forster* and *Beckler v. North Dakota Workers Compensation Bureau*, 418

N.W.2d 770 (N.D.1988), to the issue of whether or not the burden of proof falls upon the claimant to show he is entitled to continue benefits. They are inapplicable in the determination of the latter issue.

tify such a result, or are not similarly constructed to our laws. *Compare* section 65–05–04, N.D.C.C. *with* Neb.Rev.Stat. § 48–141.

As we have previously indicated herein, where the Bureau decides to terminate benefits after initially granting compensation, the burden will be upon the claimant to establish that he or she has a continuing right to receive the benefits. *Hayden v. Workers Compensation Bureau,* 447 N.W.2d at 496; *Gramling v. North Dakota Workmen's Comp. Bureau,* 303 N.W.2d 323 (N.D.1981). In *Gramling,* as in the case at hand, the claimant asserted that the burden was on the Bureau to prove that the claimant was malingering. *Gramling,* 303 N.W.2d at 325. We rejected that claim stating:

> "Gramling next contends that the burden was upon the Bureau to prove that he was a malingerer. The Bureau does not have a burden of proving that the claimant is not entitled to benefits. Rather, the burden is upon the claimant to prove that he is entitled to benefits."

*Id.* at 329. Applying similar thinking to this case, we conclude the burden was upon Kopp to establish that he was still entitled to benefits upon the Bureau's determination that the benefits should be terminated.

### II.

Kopp's second contention is that the Bureau engaged in the selective consideration of evidence by failing to resolve inconsistencies in the medical evidence provided in the record. Because of this failure, Kopp asserts the Bureau's findings of fact are not supported by a preponderance of the evidence. Primarily, Kopp contends that the Bureau ignored evidence explaining the claimant's lack of muscle atrophy and testimony which established the presence of a conversion disorder rather than malingering. When reviewing the Bureau's treatment of inconsistent medical testimony, this Court has repeatedly stressed the importance of keeping in mind the following basic rule: " 'Normally, it is within the province of the administrative agency, not the courts, to weigh conflicting medical opinions and to resolve these conflicts.

*Hassler v. Weinberger,* 502 F.2d 172 (7th Cir.1974).' " *Hayden,* 447 N.W.2d at 498 (citing *Claim of Bromley,* 304 N.W.2d 412, 417 (N.D.1981)).

■ Although the ultimate resolution of conflicting medical testimony falls with the agency, this Court has required the Bureau to clarify discrepancies among inconsistent medical reports. *DeChandt v. N.D. Workers Comp. Bureau,* 452 N.W.2d 82, 83 (N.D.1990); *Howes v. Workers Compensation Bureau,* 429 N.W.2d 730, 733 (N.D. 1988); (quoting *Hayes v. North Dakota Workers Comp. Bureau,* 425 N.W.2d 356, 357 (N.D.1988)). Initially, we limited the requirement of adequate clarification of discrepancies in medical testimony to situations involving internal conflicts in the attending physician's report. *Bromley,* 304 N.W.2d at 417. Later, we expanded the requirement to include situations involving two reports by the same physician which contained conflicting opinions. *Roberts v. North Dakota Workmen's Compensation Bureau,* 326 N.W.2d 702, 706 (N.D.1982). Finally, in 1985, this Court remanded a decision to clarify discrepancies between two different physicians. *Weber v. North Dakota Workmen's Compensation Bureau,* 377 N.W.2d 571, 574 (N.D.1985). Although we are continuing to shape the principles which govern the Bureau's treatment of inconsistent medical evidence, we must continually bear in mind the basic rule first articulated by Justice Sand: "Normally, it is within the province of the administrative agency, not the courts, to weigh conflicting medical opinions and to resolve these conflicts." *Bromley,* 304 N.W.2d at 417 (citing *Hassler v. Weinberger,* 502 F.2d 172 (7th Cir.1974)).

■ Section 28–32–19, N.D.C.C., controls our review of the administrative process. It is our obligation to affirm the Bureau's decision unless we determine that the Bureau's findings of fact are not supported by a preponderance of the evidence or its conclusions fail to be supported by its findings of fact. *Howes,* 429 N.W.2d at 734 (citing *Hayes,* 425 N.W.2d at 356–57.) However, it is not within the function of this Court to

engage in independent fact finding or substitute our judgment for that of the agency. *Howes*, 429 N.W.2d at 734 (citing *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214 (N.D.1979)). Our function is to determine whether or not a reasoning mind could have reasonably determined that the factual conclusions were supported by the evidence. *Howes*, 429 N.W.2d at 734 (citing *Power Fuels*, 283 N.W.2d at 214).

On May 13, 1985, Kopp sustained an injury to his left shoulder. After initial consultations with his primary care physician, Kopp was referred to Dr. Ray Miller, an orthopedist, who subsequently ordered an arthrogram and diagnosed Kopp's condition as a rotator cuff tear. Kopp underwent surgery to repair the rotator cuff tear on January 3, 1986. Kopp was advised to undergo physical therapy after the surgery and testified that he continued physical therapy until December of 1986.

On March 10, 1986, Kevin Axtman, RPT, reported that the claimant was showing signs of inflammation of the shoulder joint which limited claimant's motion. At this time, the claimant began "home therapy" consisting of passive movement of his arm in an attempt to prevent muscle wasting. In April of 1986, Dr. Miller observed that the claimant's condition appeared to be regressing; the claimant had full passive range of motion but exhibited zero active range of motion in flexion, extension, or abduction. Dr. Miller advised Kopp to seek biofeedback therapy with Dr. Hase. Dr. Miller indicated in May of 1986 that Kopp was still undergoing both physical and biofeedback therapy. At that time, Kopp was prescribed an anti-depressant. Dr. Miller ordered an EMG (Electromyelogram) which was determined to be normal. At this point, Dr. Miller opined that the claimant did not have any physical problems and recommended Kopp see Dr. A.F. Samuelson, a psychiatrist; Dr. Miller noted that Kopp was not responding to biofeedback therapy.

Dr. Samuelson met with Kopp on July 9, 1986. Dr. Samuelson noted that Kopp "displayed no evidences of depression nor concern about his left arm which was noted to be held tightly to his left side." Dr. Samuelson also noted that the claimant had some ability to move his arm because Kopp had been observed placing his hand in his pocket as he walked. Dr. Samuelson concluded that the claimant was suffering from either a conversion disorder or malingering. Dr. Samuelson believed malingering was the more likely of the two, however, he could not draw any conclusion as to the exact cause of the claimant's inability to move his arm. Dr. Samuelson declined to say Kopp was malingering because such a determination would involve value judgments, but did note that if Kopp suffered from a conversion disorder he should have responded to biofeedback and physical therapy.

In July of 1986, Kopp returned to Dr. Miller. At that time Dr. Miller noted that Kopp had full passive motion and had not suffered any muscle atrophy. However, Kopp still did not display any active range of motions of flexion, extension, or abduction. Dr. Miller then ordered an evaluation to be performed by a MedCenter One assessment team. The assessment team noted that the results of an arthrogram indicated that Kopp may be suffering from a possible minor leak in the rotator cuff repair, but that did not account for the discrepancy between the active and passive range of motion. The assessment team recommended that Kopp return to biofeedback and physical therapy, and if Kopp failed to improve within two months, a cervical myelogram should be performed. In concluding, the assessment team noted that Kopp's condition was likely psychological, but certainly not a typical conversion reaction, and also noted that some of the investigators characterized the problem as malingering.

Kopp continued with the biofeedback and physical therapy. In October of 1986, Dr. Miller noted that Kopp had ten percent of flexion and extension as well as ten to fifteen percent of normal external and internal rotation. Kopp still did not show any signs of muscle atrophy. As a result of Kopp's lack of improvement, Kopp underwent a cervical myelogram as recom-

mended by the assessment team. Dr. Roger F. Kennedy's review of the cervical myelogram indicated that a degenerative disc disease discovered in Kopp's neck did not affect the range of motion which should be present in his arm.

In January of 1987, the Bureau received a report from Dr. Saxvik of the assessment team from MedCenter One. After reviewing the progress of Kopp's biofeedback and physical therapy, Dr. Saxvik concluded that they were now dealing with a claimant who was malingering. He based this on the following factors: (1) the results of the extensive biofeedback excluded a conversion reaction; (2) good active movements were obtained through the application of a stimulator; and (3) malingering is evidenced by the lack of muscle wasting. On February 5, 1987, the Bureau informed Kopp of its intent to terminate his benefits. On March 5, 1987, the Bureau issued its order denying benefits.

On February 12, 1987, Dr. Miller suggested to the Bureau that Kopp be evaluated by a physician at the Mayo Clinic. The Bureau responded that it did not intend to pay for the examination. Kopp underwent an examination at the Mayo Clinic by Dr. Kokmen, who recommended Kopp continue rehabilitation and undergo a psychiatric evaluation.

Kopp returned to Dr. Miller in July of 1987 at the direction of his counsel. Dr. Miller noted that Kopp appeared to be improving. Dr. Miller could not explain the improvement in the claimant's condition in light of the fact that both biofeedback and physical therapy had apparently failed. At that time Dr. Miller believed the best explanation for the improvement was that Kopp was finally making a voluntary effort. Subsequent medical reports indicate Kopp continued to improve. In light of this improvement, Dr. Miller suggested the Bureau assign a rehabilitation specialist to the claimant. The Bureau refused, stating that it had determined that Kopp did not suffer from a disability.

In August of 1988, Kopp underwent a psychological evaluation conducted by Dr. Craig DeGree. Both the Bureau and Kopp subsequently stipulated for remand and consideration of an independent psychiatric evaluation.

Dr. DeGree, a psychologist, administered an MMPI which suggested Kopp was suffering from a hysteroid personality orientation. He stated that persons with such disorders are prone to conversion reactions. He concluded that Kopp could be suffering from either a conversion disorder or malingering, with the conversion reaction being most likely. Dr. DeGree noted that in order for a conversion disorder to be present there must be a primary stressor, which he could not identify from his limited exposure to the claimant. Dr. DeGree also noted that malingering requires a factor of secondary gain. Although Dr. DeGree initially dismissed litigation as a basis for secondary gain, he later stated in his deposition testimony that reinstatement of the benefits could be a possible goal or purpose for malingering. Dr. DeGree based his conclusion that Kopp suffered from a conversion reaction rather than malingering on the basis of his analysis of the MMPI results only, although he conceded the results indicated by the MMPI could also give rise to a diagnosis of malingering.

During January of 1989, Kopp was examined by Dr. Scott McNairy, a psychiatrist. Dr. McNairy specializes in work injury rehabilitation. Dr. McNairy concluded that the claimant did not suffer from a conversion disorder for three reasons. First, Dr. McNairy noted that Kopp had suffered no muscle atrophy. He stated that the passive exercises being performed by Kopp could not have allowed the claimant to retain "good muscle body to the arm and the shoulder." Dr. McNairy also noted that the muscle tone in the claimant's arm indicated that Kopp was probably using his arm. Dr. McNairy also noted that the size of the biceps, triceps, and deltoids present in the claimant's arm would require active strengthening exercises to maintain the muscle bulk and tone. Dr. McNairy, as well as others, also noted when he attempted to passively lift Kopp's arm, Kopp actively recruited his underarm muscles which would require voluntary effort on

Kopp's part. The third factor Dr. McNairy listed for his conclusion that the claimant was malingering was the presence of a motive. Dr. McNairy stated that reinstatement of the claimant's disability benefits would provide ample secondary gain for the conclusion Kopp was malingering. Dr. McNairy also disputed the diagnosis of a conversion order upon the sole foundation of a hysteroid personality. On the contrary, Dr. McNairy believed the underlying personality profile is more frequently associated with the development of "conscious use of symptoms for secondary gain."

Kopp contends the Bureau failed to adequately address the deposition testimony of Doctors Samuelson, Saxvik, and Miller concerning the lack of atrophy in the claimant's shoulder and arm. Kopp refers this Court to several pages of deposition testimony which he believed show Doctors Miller and Samuelson accepting the proposition that the passive manipulation of Kopp's arm may have prevented atrophy of his muscles. However, upon further review of this testimony, we note that the

testimony of Dr. Samuelson which has been referred to is actually part of the transcript of Kopp's own testimony. The testimony of Dr. Miller referred to by the claimant does not concern the atrophy of the muscle, but instead is an explanation of why the claimant has good passive range of motion. Although not in the testimony referred to by claimant, Dr. Saxvik does state that the passive manipulation of the arm could prevent atrophy. However, the Bureau provides a thorough discussion of Dr. Saxvik's testimony in paragraphs XIII, XIV, XVIII, and XXIII of the Bureau's findings of fact.[2]

Kopp also asserts that the Bureau failed to adequately address the possibility of a conversion order rather than malingering. Kopp claims that the Bureau relied solely upon Dr. McNairy and disregarded the evidence provided by the other physicians. However, a review of the Bureau's findings of fact indicates that the Bureau evaluated Dr. DeGree's testimony in paragraphs XIX, XX, XXII, and XXIII.[3]

2. The text of the relevant findings of fact is as follows:
"XIII.
"The director of the MedCenter One Assessment Team, Dr. Saxvik, indicated in a letter to the Bureau that extensive biofeedback therapy should exclude a conversion reaction. Dr. Saxvik indicated that biofeedback therapy did indeed exclude conversion reaction as a possibility.
"XIV.
"At deposition, Dr. Saxvik testified that he believed the claimant had a failed surgery syndrome. However, Dr. Saxvik is a psychiatrist and is not an expert in orthopedics as is Dr. Miller. Dr. Saxvik expressly deferred to Dr. Miller concerning whether claimant had a failed surgery syndrome. However, Dr. Saxvik believed that he could rule out the possibility of conversion reaction on the basis of biofeedback therapy that previously had been unsuccessful.
\* \* \* \* \* \*
"XVIII.
"The differential diagnosis for the claimant is between conversion reaction and malingering. Dr. Samuelson originally thought that malingering was more likely but could not so state with reasonable medical certainty. Dr. Saxvik originally diagnosed claimant as malingering, but at deposition testified that he believed claimant suffered from failed surgery syndrome. However, Dr. Saxvik was able to rule out conversion reaction as a diag-

nosis. Therefore, the bureau concluded from the testimony of Dr. Miller, Dr. Samuelson, and Dr. Saxvik that claimant was malingering.
"XXIII.
"The greater weight of the evidence taken as a whole indicates that the claimant is likely malingering. Dr. Miller ruled out any physical basis for claimant's complaints. Dr. Saxvik believed the complaints were physical in nature but deferred to Dr. Miller's opinion. Dr. Saxvik also ruled out conversion disorder. Finally, although Dr. DeGree believed claimant had a conversion disorder he did not set forth any facts to support the opinion. Dr. McNairy concluded that the claimant was malingering. The bureau accepts this medical opinion based upon its consistency with the other medical opinion, and that several factors support a diagnosis of malingering rather than conversion disorder."

3. The text of the relevant findings of fact is as follows:
"XIX.
"Claimant consulted Dr. Craig DeGree, psychologist, who tested claimant on August 25, 1988. Dr. DeGree indicated that the claimant had an elevated scale 3 on the MMPI which indicated that claimant had a hysteroid personality. Dr. DeGree believed that based upon this finding it was more likely that claimant suffers from a conversion reaction

This Court has articulated the requirement that the Bureau clarify discrepancies which may exist in the medical testimony. *E.g. DeChandt,* 452 N.W.2d 82. Adequate explanation of why the Bureau disregarded evidence favorable to the claimant may be provided through the Bureau's discussion of why the contrary evidence was accepted. "We must also keep in mind that pursuant to section 28–32–19, N.D.C.C., we must affirm the Bureau's decision unless its findings of fact are not supported by a preponderance of the evidence or its conclusions are not supported by its findings of fact." *Howes,* 429 N.W.2d at 734 (citing *Hayes,* 425 N.W.2d at 357; *Gramling,* 303 N.W.2d at 325–26).

In determining whether or not the Bureau's findings of fact are supported by a preponderance of the evidence we need only determine whether or not a reasonable mind could have reasonably determined that the factual conclusions were supported by a preponderance of the available evidence. *Howes,* 429 N.W.2d at 734. (Citing *Power Fuels, Inc. v. Elkin,* 283 N.W.2d at 220.) Additionally, in applying the preponderance of the evidence test this Court will not substitute its judgment for that of the agency or engage in independent fact finding. *Power Fuels,* 283 N.W.2d at 220. In light of the foregoing evidence, we believe a reasoning mind could have reasonably concluded that Kopp failed to prove that he continued to be disabled.

## III.

The district court granted the claimant recovery of disability benefits from February 3, 1987, through March 10, 1988, because the Bureau failed to provide Kopp with prior notice and hearing of the termination of his benefits. The Bureau concedes that *Forster v. North Dakota Workers Compensation Bureau,* 447 N.W.2d 501 (N.D.1989), is dispositive of this issue.

For the reasons stated herein, the judgment of the district court is affirmed.

VANDE WALLE and GIERKE, JJ., concur.

LEVINE, Justice, concurring specially.

I concur in Parts I and III of the opinion and in the result. I believe the Bureau adequately explained why it accepted the expert testimony supporting its finding of malingering. I have no disagreement with the principle, iterated and reiterated by the majority, that "it is within the province of the administrative agency, not the courts,

than is malingering. Dr. DeGree was unable to provide any other rationale for his opinion. Dr. DeGree did concede that an individual with a hysteroid personality pattern could be either malingering or having a conversion disorder. A diagnosis of a hysteroid personality in no way precludes a diagnosis of malingering.

"XX.

"The bureau obtained an independent medical evaluation from Dr. Scott McNairy, who examined the claimant on January 27, 1989. Dr. McNairy repeated some of the testing that Dr. DeGree had done. Dr. McNairy indicated that the claimant had an invalid MMPI score because questions were omitted or answered both true and false. Dr. McNairy was able to review the results of the MMPI that Craig DeGree, Ph.D., had administered. Dr. McNairy testified that since the primary purpose of a conversion disorder is to keep unacceptable ideas or impulses out of awareness they are channeled or converted into somatic or sensory symptoms. The physician found no indication of such a primary stressor in Kopp's history. In his deposition Dr. DeGree had confirmed that by definition diagnosis of conversion reaction requires a primary stressor. Although neither physician found a primary stressor, Dr. McNairy believes that the absence of a primary stressor helps to rule out a diagnosis of conversion disorder, while Dr. DeGree could not so conclude.

\* \* \* \* \* \*

"XXII.

"The bureau accepts Dr. McNairy's opinion that the claimant is malingering rather than suffering from a conversion reaction due to the three factors that he has set forth which validate his opinion. These three factors are lack of atrophy and muscle bulk of the left shoulder, presence of active recruitment of the opposing muscles when attempting to elevate the arm, and presence of secondary gain. Dr. DeGree was unable to give any factor supporting a diagnosis of conversion disorder over that of malingering other than hysteroid personality which is not indicative of either disorder. Dr. McNairy also indicated that claimant's sudden improvement which Dr. Miller testified to was more consistent with malingering than with conversion disorder."

For the text of paragraph XXIII, see footnote 2, *supra.*

to weigh conflicting medical opinions and to resolve these conflicts." It is clear, however, under our case law, that once having resolved those conflicts, the agency must explain its reasons for choosing the evidence unfavorable to the claimant. *Weber v. North Dakota Workmen's Compensation Bureau*, 377 N.W.2d 571 (N.D.1985). I do not understand the majority to be disparaging that principle but I am not absolutely certain. Therefore, I do not join Part II of the decision.

MESCHKE, Justice, dissenting.

I respectfully dissent. When a claimant has once proven a compensable disability, the Bureau should bear the burden of proving a change of that condition before discontinuing disability benefits.

Kopp injured his left shoulder in May 1985 while employed by the Director of Institutions as a custodian. The Bureau accepted his claim, paid his medical expenses, and, after Kopp had surgery to repair a rotator cuff tear in January 1986, paid disability benefits. The Bureau discontinued disability benefits in February 1987 without notice or opportunity for hearing, although physicians reported that his arm still had "minimal active motion" and could not explain why.

After a good deal of hassle, the Bureau finally ruled, after a hearing in March 1988, that Kopp "failed to prove that he remains disabled." On appeal, Kopp's disability benefits were extended by the district court through March 10, 1988 to remedy due process violations. *See Beckler v. North Dakota Workers Compensation Bureau*, 418 N.W.2d 770 (N.D.1988); *Forster v. North Dakota Workers Compensation Bureau*, 447 N.W.2d 501 (N.D.1989). After remand by the district court, more evidence, and further consideration, on July 26, 1989 the Bureau issued another "Order Affirming Order Affirming Order Denying Further Benefits." The Bureau again ruled that Kopp "failed to prove that he remains disabled" and "failed to prove that he is entitled to further benefits."

Recently, in *Perman v. North Dakota Workers Compensation Bureau*, 458 N.W.2d 484 (N.D.1990), we left open the question of which party has the burden of proof when disability benefits are changed.

In *Froysland v. North Dakota Workers Compensation Bureau*, 432 N.W.2d 883 (N.D.1988), this court ruled in favor of a claimant by reversing to permit the claimant an opportunity to cross-examine the Bureau's medical experts before termination of claimant's disability benefits. In doing so, we said: "If the Bureau terminates benefits, after initially accepting a claim and paying benefits, the claimant has the burden of proving his or her right to continue receiving benefits." *Id.* at 887. Which party had the burden of proof was not disputed in that case, nor was it disputed in this case. However, Professor Larson observes (1) that in some jurisdictions once a work-connected disability is established, there is a "presumption of continuance of that condition until the contrary is proved," which shifts "the burden of proof to the employer to prove change of condition" [3 *Larson's Workmen's Compensation Law* § 80.33(d) (1989)]; and (2) that "[t]he burden of proof of showing a change in condition is normally on the party, whether claimant or employer, asserting the change" [*Id.*, § 81.33(c)]. No question about the burden of proof was appealed in this case.

458 N.W.2d at 486–87, n. 2. Today, the majority opinion views the question as having been answered, selects dicta from some past decisions, and declares, with little explanation, that "where the Bureau decides to terminate [disability] benefits after initially granting compensation, the burden will be upon the claimant to establish that he or she has a continuing right to receive [disability] benefits."

I have reviewed our prior decisions touching on this subject before.

The dictum repeated in the majority opinion should be more carefully considered. In *Gramling v. North Dakota Workmen's Compensation Bureau*, 303 N.W.2d 323, 329 (N.D.1981), the opinion for this court rejected an argument that the "burden was upon the Bureau to

prove that [the claimant] was a malingerer," saying that "the burden is upon the claimant to prove that he is entitled to benefits." We have recently begun citing *Gramling* for a broader statement:

> "If the Bureau terminates benefits, after initially accepting a claim and paying benefits, the claimant has the burden of proving his or her right to continue receiving benefits."

*Hayes v. North Dakota Workers Compensation Bureau,* 425 N.W.2d 356, 357 (N.D.1988). Similarly, *Howes v. Workers Compensation Bureau,* 429 N.W.2d 730, 733 (N.D.1988); *Hayden v. North Dakota Workers Compensation Bureau,* 447 N.W.2d 489 (1989); and now this majority opinion each reiterate the broad assertion. Unfortunately, none of these decisions have carefully looked at the role of the burden of proof in ending benefits.

That issue was not involved in *Gramling, supra,* because he was seeking reinstatement of disability after having returned to work for awhile. Like an initial claimant, Gramling had the burden of persuading the Bureau that his disability had returned. Thus, our *Gramling* decision did not study the proper placement of the burden of proof for ending benefits. So also, our following statements have been dicta, neither dictated by the facts of the cases decided nor derived from adversary presentations.

*Risch v. North Dakota Workers Compensation Bureau,* 447 N.W.2d 308, 312 (N.D. 1989) (Meschke, Justice, concurring). I am satisfied that precedent did not fairly forecast today's result.

This court has clearly held that "the moving party has the burden of going forward as well as the burden of persuasion in an administrative hearing." *Matter of Stone Creek Channel Improvements,* 424 N.W.2d 894, 898 (N.D.1988). *See also Kobilansky v. Liffrig,* 358 N.W.2d 781, 790 (N.D.1984). A public agency stands on the same footing in this respect as a private party. Jones on Evidence § 5.6, p. 540 (1972). So here, as the moving party, the Bureau should bear the burden of proof.

Instead, today's holding sanctions arbitrary action by the Bureau. If the Bureau notifies a claimant that disability benefits will be discontinued, the Bureau has no duty to develop evidence. Unless the claimant develops current medical evidence to support his disability, the Bureau need do nothing and can simply rule that the claimant "failed to prove that he remains disabled." That allows arbitrary action.

In a case where the evidence is closely balanced, the Bureau will always discontinue benefits. Or, much as in this case, the Bureau can submit the same medical evidence to different physicians, time and again, until it finds a favorable opinion. The Bureau could terminate a finding of disability on a reappraisal of the earlier evidence. These examples illustrate the risk that misplacement of the burden of proof will permit erroneous results and deprive claimants of the sure and certain compensation that the act contemplates.

A decision on disability, once made, is entitled to evenhanded dependability. The Bureau is entitled to rely on the preclusive effect of a prior determination that a claimant is not disabled and may refuse to reconsider a renewed claim without proof of a change of condition. *Olson v. North Dakota Workers Compensation Bureau,* 453 N.W.2d 606 (N.D.1990). Absent fraud or other good cause, a prior determination that a claimant's condition is disabling should have a similar preclusive effect to prevent discontinuance of benefits solely on a reappraisal of the prior evidence. *See, for example, Rush v. Secretary of Health and Human Services,* 738 F.2d 909, 914 (8th Cir.1984). This court has recognized the effect of res judicata to prevent repetitive attacks on administrative agency decisions and "to protect successful parties from unnecessary, duplicative proceedings which cause drains on the resources of both the parties and the judiciary." *Berdahl v. North Dakota State Personnel Board,* 447 N.W.2d 300, 307 (N.D.1989). *See also Westman v. Dessellier,* 459 N.W.2d 545, 547 (N.D.1990). Since Kopp proved his disability, the Bureau should bear the burden of proving a change, that

he is able to work, before discontinuing his disability benefits.

Elsewhere, it is well established that the burden is on the moving party to change continuing benefits in workers compensation cases, as the cavalcade of decisions from other states, acknowledged by the majority, demonstrates. 3 *Larsons's Workmen's Compensation Law* § 81.33(c). There is a presumption of continuance of a condition until the contrary is proved. *Id.* at 80.33(d).

A prime function of the burden of proof is to fairly allocate the risk of nonpersuasion. 9 Wigmore, Evidence § 2485 (Chadbourn rev. 1981). *See Sunderland v. North Dakota Workmen's Compensation Bureau,* 370 N.W.2d 549, 552 (N.D. 1985). When a workers compensation claimant has established disability, the universal rule is that the risk of nonpersuasion to end benefits should be on the employer and the Bureau. "The burden of proof of showing a change in condition is normally on the party, whether claimant or employer, asserting the change, although, in some cases, the burden may shift to the other party once the movant has established his case." 3 Larson's Worker's Compensation Law, § 81.33(c) (1989) (footnotes omitted). The burden of proof is similarly applied for ending other forms of disability benefits. 70A Am.Jur.2d *Social Security and Medicare* § 690 (1987). There is a need to safeguard against the risk of erroneous deprivation of continuing benefits. *See Beckler v. North Dakota Workers Compensation Bureau,* 418 N.W.2d 770 (N.D.1988). Since the claimant has proven his entitlement to benefits, it is the Bureau that should be expected to prove a change of condition to reopen an award.

*Risch,* 447 N.W.2d at 312 (Meschke, Justice, concurring). Of course, the Bureau has continuing power to review awards. NDCC 65–05–04. But, when it does, the claimant receiving benefits has proven disability and should not have to do so again. In fairness, a claimant receiving benefits should not be deprived of them without proof that the person is able to work.

The evidence in this case is disordered, not decisive. After surgery, Kopp had "minimal active motion" in his previously injured arm, although medical experts could not really explain why. The Bureau ruled repeatedly that Kopp "failed to prove that he remains disabled." I would reverse and remand with directions that the Bureau carry the burden of proving that Kopp was able to work before discontinuing his benefits.